IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


WALLACE J. DESMARAIS, JR.,)
                          )
          Plaintiff,      ) C.A. No. 15-01226-LPS-CJB
                          )
v.                        )
                          )
FIRST NIAGARA FINANCIAL   )
GROUP, INC.,              )
                          )
          Defendant.      )



            Wednesday, February 24, 2016
            9:30 a.m.
            Courtroom 2A



            844 King Street
            Wilmington, Delaware



BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
     United States District Court Judge



APPEARANCES:



         FARUQI & FARUQI, LLP
         BY:  JAMES R. BANKO, ESQ.
         BY:  DERRICK B. FARRELL, ESQ.

                   Counsel for the Plaintiff

```
 1    APPEARANCES CONTINUED:

 2

          RICHARDS, LAYTON & FINGER, PA
 3        BY:  SARAH ANNE CLARK, ESQ.

 4              -and-

 5        SULLIVAN & CROMWELL, LLP
          BY:  LAURA KABLER OSWELL, ESQ.
 6
                    Counsel for the Defendant
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
 1                    THE COURT:  Everyone, before we

 2      get started, let me just say a few things for

 3      the record.  The first is that we're here today

 4      in the matter of Desmarais versus First Niagara

 5      Financial Group, Incorporated, et al.  This is

 6      civil action number 15-1226-LPS-CJB here in our

 7      court.  We're here today for argument on

 8      Plaintiff's motion for expedited discovery.

 9                    Before we go further, let me have

10      counsel for each side introduce themselves for

11      the record and let's start with counsel for

12      Plaintiff's side and beginning with Delaware

13      counsel.

14                    MR. FARRELL:  Good morning, Your

15      Honor.  Derrick Farrell from Faruqi & Faruqi for

16      the Plaintiffs and with me is my colleague, Mr.

17      James Banko.

18                    THE COURT:  Okay.  Welcome.

19                    MR. BANKO:  Thank you.

20                    THE COURT:  And counsel for the

21      Defendants.

22                    MS. CLARK:  Good morning, Your

23      Honor.  My name is Sarah Clark from Richards,

24      Layton & Finger here for Defendants.  With me at
```

4

```
 1      counsel table is Laura Oswell.  We entered our
 2      pro hac papers.  They have not yet been granted,
 3      but with your permission Ms. Oswell will be
 4      doing today's argument.
 5                  THE COURT:  I'll grant that
 6      permission for today's purposes.  I'm sure that
 7      will come through shortly.
 8                  Counsel, I know I've allocated 30
 9      minutes per side for argument on the motion and
10      since it's Plaintiff's motion, I'll have them go
11      first.  And after we've finished that we have
12      some logistical issues in the case as well
13      before we're finished, but who will be speaking
14      for Plaintiff's counsel today?
15                  MR. FARRELL:  I will, Your Honor.
16                  THE COURT:  Okay.  Let's have
17      Plaintiff's side come forward and I'll let you
18      make your presentation and I may have some
19      questions for you as well.
20                  MR. FARRELL:  Sure.  Before the
21      Court today is a very narrow issue of whether
22      the PSLRA discovery stay should be lifted or
23      produce a very finite set of documents that have
24      already been produced to the Plaintiffs in a
```

1   related action that is pending out in the State

2   of New York, New York State Court that asserts

3   breach of fiduciary duty action as opposed to

4   here where we have securities law claims.

5          THE COURT:  So Mr. Farrell, just

6   to be clear about it.  The documents you're

7   asking for, these are the documents that have

8   been produced in the New York State action, that

9   is the six actions in New York State, and not

10   necessarily any documents produced in the

11   Delaware action?

12          MR. FARRELL:  Yes.  My

13   understanding based on reviewing the records and

14   defense counsel will have to inform us as to

15   what specifically is going on, is that nothing

16   has been produced to my knowledge so far in the

17   Delaware action where there's, as you mentioned,

18   only one being filed, but there have been

19   documents produced in the New York action, which

20   I believe are the core documents such as board

21   minutes and banker books which are highly

22   relevant to our disclosure claims.

23          THE COURT:  And how many documents

24   are we talking about that have been produced in

```
 1        the New York State actions?

 2                    MR. FARRELL:  Unfortunately I

 3        don't know the specific number at this point, so

 4        I'd have to confer with defense counsel.

 5                    THE COURT:  So to the extent your

 6        motion talks about a limited production or a

 7        particularized productions, when we're talking

 8        about the number of documents you don't know

 9        whether that's a hundred or a million pages or

10        something in between?

11                    MR. FARRELL:  Currently no, but I

12        would suspect it's relatively small, which is

13        customary in these cases.

14                    THE COURT:  Sure.  Let me let you

15        continue.

16                    MR. FARRELL:  Sure.  There are

17        essentially three key issues here.  The first is

18        whether we have met our burden under the PSLRA

19        that the stay should be lifted.  Defendants also

20        argue that discovery is not appropriate

21        currently under Rule 26, but I think the key

22        issue here relates to the PSLRA discovery stay

23        and I intend to focus on that first unless Your

24        Honor has any questions.
```

```
 1              THE COURT:  Just so no dispute

 2      really that it's the PSLRA discovery stay

 3      provisions and the ability to get over that is a

 4      stricter standard, a higher hurdle, than a

 5      reasonable test, for example, to overcome Rule

 6      26 prescription on early discovery, that's the

 7      one you need to focus on.  If you can get over

 8      that, presumably you can get over the Rule 26

 9      related hurdle, am I right?

10              MR. FARRELL:  Yes, that's exactly

11      my view, that because the hurdle is higher on

12      the PSLRA issue, it makes sense to focus on

13      that.  If that is satisfied, then I think Rule

14      26 is equally satisfied.

15              THE COURT:  Okay.

16              MR. FARRELL:  The second issue I

17      want to focus on is what I'll call the scope and

18      materiality issue.  And I'll walk through some

19      of the key disclosure issues and explain why the

20      documents we believe were produced in the New

21      York action are relevant to those disclosure

22      issues.

23              And then finally I want to address

24      what I'll refer to as the laches argument that's
```

```
 1        put forward by Defendants.  Now, Defendants
 2        routinely refer to the discovery stent of the
 3        PSLRA that a stay is only lifted under
 4        extraordinary circumstances, they use that
 5        language throughout the brief.  But I think it's
 6        important to focus on the language that's
 7        actually used in the statute.  And the PSLRA
 8        says that in any private action arising under
 9        this chapter, all discovery in other proceedings
10        shall be stayed during the pendancy of any
11        motion to dismiss, unless the Court finds on the
12        motion of any party that particularized
13        discovery is necessary to preserve evidence or
14        to prevent undue prejudice to that party.  And
15        what the case law teaches us is that the
16        irreparable harm standard is actually a higher
17        standard than undue prejudice.   I think it's
18        important for the Court to note that it's quite
19        well established that where there is an
20        uninformed vote, that leads to irreparable harm.
21        So I think it's quite easy that because we've
22        alleged material disclosure claims, that we meet
23        the undue prejudice standard because I think we
24        meet the even higher irreparable harm standard.
```

| | |
|---|---|
| 1 | And one of the key cases we rely |
| 2 | on is the Enron decision out of the Southern |
| 3 | District of Texas and their documents have been |
| 4 | produced in a related action.  The Plaintiffs |
| 5 | asked for them to be produced in the securities |
| 6 | action and they pointed out that the PSLRA |
| 7 | discovery stay was intended to prevent fishing |
| 8 | expeditions and it was not designed to keep |
| 9 | secret from counsel in securities cases |
| 10 | documents that have already become available for |
| 11 | means other than in the securities case.  And as |
| 12 | here, the Defendants there claim that because |
| 13 | the motion to dismiss has been filed, the Court |
| 14 | should strictly adhere to the PSLRA discovery |
| 15 | stay and not produce documents that already have |
| 16 | been produced in the other case.  And the Court |
| 17 | disagreed with Defendants there and held quote, |
| 18 | in a sense this discovery has already been made |
| 19 | and is merely a question of keeping it from a |
| 20 | party because of the strictures of a statute |
| 21 | designed to prevent discovery abuse.  And then |
| 22 | thereafter required the documents be produced. |
| 23 | Similarly in Kneiting, they |
| 24 | actually were produced in another case.  It was |

```
1     a preliminary injunction motion and the Court
2     required what I would call that the core
3     documents to be produced, those were the banker
4     books, the board minutes, things of that nature
5     that are routinely produced in this case and
6     lifted the stay.  So there we weren't with the
7     situation where documents had already been
8     produced and all you have to do is copy a CD,
9     but rather actually going and collecting
10    documents and producing them.  Because again
11    there is undue prejudice here because of the
12    irreparable harm that would result from an
13    uninformed vote.
14              Now Defendants point to a number
15    of cases where documents had already been
16    produced in another action and the Court refused
17    to lift the discovery stay.  One of those is the
18    American Funds securities litigation from the
19    Central District of California.  And one
20    important issue there is that the Court found no
21    undue prejudice that would result from the
22    documents not being produced, because they have
23    been produced to a government agency, presumably
24    they wouldn't be lost and there were no
```

```
 1       disclosure issues.  So again, we don't have the
 2       irreparable harm situation that we have here.
 3                   Fannie Mae was also similar.  And
 4       in that case the Plaintiffs sought production of
 5       documents that had been produced to a government
 6       entity and the Court again refused to lift the
 7       stay because there wasn't a disclosure issue,
 8       there wasn't risk of the documents either being
 9       destroyed or some sort of irreparable harm that
10       result from an informed vote.
11                   THE COURT:  Sounds like what
12       you're suggesting is that in just about any case
13       in which there has been a prior state court
14       production and in which a plaintiff like you
15       makes a claim on the PSLRA, it's going to be
16       either followed up with a PI motion or a PI
17       motion has already been filed, in just about any
18       case there would be undue prejudice.  Is that
19       right?  I mean is what you're asking for kind of
20       almost a de facto rule that just about any case
21       like this under these circumstances undue
22       prejudice has been met and the docs would have
23       to be produced?
24                   MR. FARRELL:  I wouldn't say every
```

```
 1      case, because we still have to show our burden
 2      that we stated the claim, right?  So it's not as
 3      though we simply file the claim and we
 4      automatically get discovery.  We still have to
 5      show there's an underlying disclosure issue
 6      under federal securities laws.
 7                  THE COURT:  We're not even there
 8      yet, right?  I mean, we're not even going to get
 9      to have you stated a claim, is their motion to
10      dismiss valid?  We're not going to get there for
11      a while.  So I guess I'm trying to figure out,
12      you know, you see the cases with regard to undue
13      prejudice and you know, some, as you say, like
14      Kneiting or Kneiting, and the Enron case go one
15      way and then cases that the Defendants cited,
16      including the ones you mentioned, but also
17      particularly cases like Lusk and Dimple, they go
18      the other.  And I'm trying to figure out, is
19      what you're suggesting that there's a particular
20      factual scenario going on here that makes this
21      case maybe a little different than some and
22      shows that we've got undue prejudice here in a
23      matter that wouldn't necessarily be the case in
24      just about any kind of procedural situation like
```

```
 1     ours?  Or no, is it basically any case that kind
 2     of fits our procedural situation you're going to
 3     get the docs and undue prejudice is going to be
 4     shown?
 5              MR. FARRELL:  Well, I think you
 6     need to be able to show, as I mentioned, that
 7     you actually have some sort of disclosure issue
 8     and I want to go through some of the crucial
 9     disclosure issues and why it's relevant here.
10     One thing I'll point out like in Dimple, as you
11     mentioned, one of the reasons the Court denied
12     was there was form shopping going on, because
13     the Plaintiff's action filed in State Court
14     initially and then chose after the fact to go to
15     Federal Court.  And so that's factually
16     different.  And the Lifetime Fitness case there
17     was not a situation where one plaintiff group
18     was getting ahead of the other plaintiff's
19     group.  That's what we have here where the New
20     York plaintiffs are getting ahead of us.  And
21     Lifetime Fitness, that's the 2015 District of
22     Minnesota case.  I believe that is Lusk.  I
23     don't have the plaintiff name in front of me.
24              But I'd like to kind of focus on
```

14

```
 1        some of these disclosure issues to help Your
 2        Honor understand what we're focused on here is
 3        one of the things they do in the proxy is they
 4        disclose the range that was -- of indication of
 5        interest by potential purchasers.  You had
 6        KeyCorp, Party A and Party B.  And the range
 7        they list is $10 to $11.50.  At the end of the
 8        day, though, they get to an implied value,
 9        because this is a cash of stock transaction of
10        $11.50, so 10 cents under their range.  But we
11        don't know if KeyCorp was at the top, Party A
12        was at the top, Party B was at the top.  Whether
13        only one as at $10 and maybe two were at $11.50.
14        And the case lase is very clear, and especially
15        in Orchard, granted it's stay for a chancery
16        decision, but they do require the disclosure of
17        the specific indications of interest.  And
18        that's very important for stockholders to
19        understand, because if Party B was the one
20        offering $11.50 but they chose not to do it,
21        then this range is kind of misleading because
22        when you look at it you think oh maybe it was
23        KeyCorp because they got to the highest number
24        at the end of the day.
```

1          And where is that information

2     going to be?  It's going to be in the board

3     minutes or presumably it's going to be in the

4     banker books and those are documents that we

5     want.  The other thing --

6          THE COURT:  In other words, am I

7     right that you think among the documents that

8     have been produced in the New York State actions

9     are going to be documents that would further

10    flush out the nature of the claims you're making

11    in your complaint; is that right?  In other

12    words, you're alleging that certain information

13    that should have been included was omitted in

14    the particular proxy statement you focus on and

15    then perhaps the definitive proxy statement too,

16    and you'd like to get your hands on information

17    that fills in some of those factual blanks to

18    help support your preliminary injunction motion

19    that's forthcoming; is that right?

20         MR. FARRELL:  Right.  We're trying

21    to prepare for the preliminary injunction

22    motion, but it's more than just that it was

23    omitted.  I believe the information is necessary

24    in order to make the existing statements not

1       misleading, which is important for a Section 14A

2       claim.  And so, my focus here is on the

3       preliminary injunction motion, that's why

4       there's irreparable harm, because it's very

5       difficult to fashion a damages remedy for a

6       disclosure violation.  In some instances the

7       Court of Chancery has used the approach of a

8       quasi appraisal remedy, but that's not well

9       established in the Federal Courts and it's very,

10      very difficult to say what is the loss

11      associated with not knowing the offer prices.  I

12      don't even know where to begin on that.  And

13      that's why it's important that be addressed at

14      preliminary injunction phase.  And again we're

15      seeking a very narrow set of documents that

16      should have no burden on Defendants to produce.

17                  THE COURT:  I guess, you know,

18      when I asked you what kind of makes this case

19      different than maybe lots of other cases that

20      might, that may fall into this same procedural

21      scenario, the thing you said a couple times is

22      well, we still have to show or demonstrate that

23      our claims, you know, that our claims of

24      misleading or the disclosures or disclosures

```
 1        that omit information, I forget the word you
 2        used, but I think the gist was, we have to show
 3        that our claims had some basis to them.  And I
 4        guess what I'm asking is, you know, we're at a
 5        procedural stage in which I won't be making that
 6        call.  I won't be determining before I decide as
 7        to whether you get expedited discovery or even
 8        perhaps before a preliminary injunction motion
 9        is actually fully teed up.  I won't be deciding
10        at this stage when I'm considering your
11        expedited discovery motion whether or not those
12        claims do have basis.  For all I know, they
13        might ultimately be, a motion to dismiss might
14        ultimately be granted here.  I guess my question
15        is, how am I supposed to tell that this is a
16        kind of case where your claims have basis when
17        I'm not going to be going through the motion to
18        dismiss process that the PSLRA contemplates
19        happens in a case?
20                 MR. FARRELL:  I think that's where
21        Rule 26 comes into play, because Rule 26, one of
22        the factors they do look into in whether to
23        grand expedited discovery is whether you stated
24        an underlying claim.  So I do think that would
```

1    be something appropriate for the Court to

2    consider, because there are kind of two issues

3    here; one, should the discovery stay be lifted,

4    but then we also do have to get past Rule 26

5    still.  But I think the discovery stay standard

6    of the PSLRA is very high.  But to the extent

7    Your Honor has concerns about not being able to

8    look into it, I think that's perfectly

9    appropriate under Rule 26 for the Court to do.

10   So you know, to Your Honor's concern that what

11   if these don't have any merit to them, I think

12   you can look at that now and consider that as a

13   factor, and that's why I'm going to talk about

14   some of these, what I view as important

15   disclosure issues in this case.

16              THE COURT:  And before we get

17   there, let me just make sure I understand.

18   You're suggesting that the Rule 26, the process

19   for deciding whether or not discovery should be

20   expedited pursuant to the restrictions of Rule

21   26 would have me, depending how likely I am, to

22   ultimately be determining whether there's merit

23   to these allegations in the complaint?

24              MR. FARRELL:  I believe that's one

```
 1    of the factors that is considered and evaluated

 2    under Rule 26 and I believe that's also pointed

 3    out in Defendant's brief.  Give me one moment.

 4              THE COURT:  I just want to make

 5    sure I know which portion of the test as to Rule

 6    26.

 7              MR. FARRELL:  Sure.

 8              THE COURT:  I mean, for example,

 9    on Page 12 of the Defendant's brief, they

10    reference the reasonableness standard, the

11    second test, which I said I think is the

12    appropriate test to use in these circumstances,

13    not the Natarro test.  And they consider factors

14    as to whether there's a preliminary injunction

15    hearing, what's the need for discovery and

16    what's the breadth of the party's request.  And

17    I'm just not sure I'm understanding --

18              MR. FARRELL:  Sure.  What I'm

19    referring to is on Page 12 of the Defendant's

20    brief and it's referring to the Natarro test.

21    And looked at four factors, the first is

22    irreparable injury, the second being some

23    probability of success on the merits.

24              THE COURT:  Okay.  I understand.
```

| | |
|---|---|
| 1 | MR. FARRELL:  So that's what I'm |
| 2 | referring to there.  And they talk about it in |
| 3 | their brief in the context of Rule 26, Section F |
| 4 | specifically. |
| 5 | THE COURT:  I get it.  In a |
| 6 | previous decision I have determined that I don't |
| 7 | think the Natarro test is the appropriate |
| 8 | test under these circumstances in Rule 26 that |
| 9 | should be a reasonableness test, but I see where |
| 10 | you're pointing to.  I got it.  That's a |
| 11 | decision on a case called Kone from I think |
| 12 | 2011.  Okay.  Lastly, before I let you move on, |
| 13 | you mentioned I think one of the issues that |
| 14 | Defendants raise, which is look, there are going |
| 15 | to be other remedies here for shareholders of |
| 16 | the kind the Plaintiff represents, one of them |
| 17 | is the appraisal process through Section 262, I |
| 18 | think it is, of the Delaware corporation law. |
| 19 | Isn't that a remedy that a shareholder to |
| 20 | descents as to the merger could pursue in state |
| 21 | court? |
| 22 | MR. FARRELL:  Certainly appraisal |
| 23 | is one remedy that can be pursued, but that |
| 24 | assumes that stockholders have sufficient |

1        information to determine whether to pursue that

2        remedy.  And one of the things you need to know

3        in determining whether to pursue that remedy is

4        well, was the process sufficient, because the

5        Court Chancery in several appraisal decisions

6        including the Ancestry decision very recently by

7        Vice Chandler Glascock.  He considered the

8        transaction process, but several others have as

9        well.  But it's also important to look at the

10       banker analysis, understand it fully in order to

11       say hey, I think this deal's undervalued or it's

12       not.  So you need to get past the first hurdle

13       of being sufficiently informed so you can decide

14       whether to exercise those appraisal rights.

15                  THE COURT:  I guess that

16       shareholder, presume this case moves forward and

17       presume it's meritorious enough to get past the

18       motion to dismiss stage, here we're going to

19       have discovery produced in a case.  And

20       presumably shareholders, I mean shareholders

21       that are participating in such state court

22       actions, they're are going to be the ability,

23       right, to have that kind of information in some

24       way and use that through this appraisal process,

 1        aren't they?  Isn't that another option that

 2        they have, a way to seek redress other than

 3        through using this kind of discovery vis-a-vis

 4        your preliminary injunction motion?

 5                   MR. FARRELL:  Well, see if I can

 6        hopefully answer Your Honor's question fully.

 7        Again, my point here is that they need to have

 8        the information to decide whether in the first

 9        place to seek appraisal.  Because remember,

10        under the appraisal statute, you're not

11        guaranteed the transaction price.  You're

12        running the risk of getting below the

13        transaction price and that's happened in not so

14        recent decisions, so you need to be fully

15        informed in deciding whether to seek appraisal.

16        And some of these issues that we're raising go

17        specifically to the company's value in the

18        banker's analysis.  One of those is with the

19        inconsistent use of multiples.  And one of the

20        things they do is they do a comparable company's

21        analysis.  You look at the other companies, look

22        at the multiples they are trading at and you

23        compare it to the target and you come up with a

24        value based on that.

1              In the discounted cash flow

2      analysis, throughout the perpetuity period,

3      there are two different models you can use.  One

4      is called the Gordon growth model, where you

5      apply a specific growth rate into perpetuity,

6      that's a projection period you're valuing the

7      company.  The other one you can use what's

8      referred to as terminal multiples.  And often

9      times what bankers do in determining those

10     multiples, what they usually do is look at the

11     comparable company's analysis and they will

12     import those multiples and use that during the

13     terminal period for the DCF analysis.  But here,

14     for unexplained reasons, they used a lower

15     number which lowered the DCF value than what

16     they used for the comparable companies.  And so

17     the bankers need to disclose, so the

18     stockholders can be fully informed, why they did

19     that inconsistent usage.

20              The other thing that stockholders

21     are denied are projections for the buyer.  This

22     is a cash and stock transaction.  Without the

23     projections for the buyer, you don't know what

24     the buyers, you know, real value is and we know

 1          that the buyer's financial advisor did, in fact,

 2          receive projections, so there's a vacuum

 3          information there.

 4                    THE COURT:  I guess all I'm asking

 5          about this line of questioning is, I'm trying to

 6          determine other bases of relief.  If I'm an

 7          aggrieved shareholder, if I believe I really

 8          have I don't have it and didn't see in this

 9          preliminary proxy statement and ultimately the

10          definitive proxy statement information that I

11          should see, that I should know, that I should

12          have the ability to consider before I make an

13          informed choice on this important merger

14          decision, one way to effectuate that

15          shareholder's rights would be to, I suppose, to

16          grant you expedited discovery here, presumably

17          some of the information or a lot of it that

18          you're seeking is in fact found in the discovery

19          that's been provided in other State Court

20          actions.  On behalf of this representative

21          shareholder, you can file a preliminary

22          injunction motion and that if successful that

23          could stop the merger.  But I'm asking, let's

24          say that doesn't happen.  Merger goes through,

 1       but I'm an aggrieved shareholder, I don't think

 2       the merger should have gone through.  What

 3       options do I have?  Do I have other options for

 4       redress?  Isn't it possible that ultimately I

 5       will get my hands on these kinds of documents

 6       you're talking about and I would be able to use

 7       some of those documents through the Section 262

 8       process that the defense described or isn't it

 9       possible that in this very case, again, let's

10       say the preliminary injunction motion is denied,

11       but aren't you seeking other remedies, remedies

12       with respect to damages and remedies with

13       respect to decision.  Aren't those other options

14       that an aggrieved shareholder would have other

15       than getting the expedited discovery now and

16       trying to win a preliminary injunction motion

17       based on that discovery?

18                 MR. FARRELL:  Sure.  I guess you

19       could say there are three different avenues.

20       One is in this Court.  Yes, you're right.  We do

21       have the complaints.  There are damages claims,

22       but I believe, as I've pointed out in the case

23       law, proving damages is going to be very, very

24       difficult in a disclosure case.  Another avenue

```
 1      they have is the Future Lou litigation that's
 2      going on in the State of New York and also in
 3      Delaware, but that's a different standard,
 4      because in order to obtain money damages you're
 5      going to have to overcome 102(b)(7) and show bad
 6      faith at the end of the day.  You know, unless
 7      someone gets creative with other arguments that
 8      would somehow get around 102(b)(7), but I'm not
 9      aware of them in that action.  And the other
10      action is appraisal, but again, the problem is
11      they are not fully informed and they run the
12      risk of getting below the transaction price.  So
13      I just think that the best option here is for
14      this to be addressed at the outset and
15      appropriately and then it can be dealt with
16      disclosures.  We don't have to get into a
17      measure of damages.  It's much more simplistic
18      and the way certainly the Court of Chancery has
19      repeatedly preferred it.  And simply because
20      there's -- let's say they are the same claims
21      that happened in state and federal court,
22      doesn't necessarily follow that the state court
23      is going to deny relief and rather that the
24      federal court is going to deny it and the other
```

```
 1        court is going to grant it.  And I'll point Your

 2        Honor to what I referred to as the MySpace case,

 3        often referred to as Intermixed Media at the

 4        time.  And that was the  Central District of

 5        California, and the case is Brown versus Brewer.

 6        It's 2010 US District Luxus, 60863.  It's a 2010

 7        decision.  And there the federal claims actually

 8        went forward past summary judgment.  My memory

 9        is it settled before then, but the state claims

10        ended up going nowhere.  They were appealed to

11        an appellate court in California and were shot

12        down.  So it's certainly there are examples out

13        there where federal claims have gone forward and

14        state disclosure claims have not.

15                 So I think it's important that,

16        you know, we treat this as an independent case.

17        And I think we have stated, you know, some real

18        disclosure issues.  Another one is to Your

19        Honor's point about the appropriateness of

20        another remedy is again the projections, because

21        in determining whether to seek appraisal, it's

22        very important that you understand how reliable

23        the projections are.  And there's plenty of

24        cases that say well, the bankers projections are
```

1    far less reliable than what management does.

2    But what the proxy says, says there's some

3    projections that are done by management and then

4    other times they use language that the

5    projections were prepared at the direction of

6    management, which these open the question for --

7    to make sure the statements aren't misleading,

8    are there two sets of projections or did

9    management create them or when I hear the

10   language at the direction of management, that

11   suggests to me there was some sort of banker

12   involvement or third party, which if I'm the

13   stockholder, I'm going to give less weight to

14   those.  So if you're trying to seek appraisal,

15   you need to understand what weight to give them

16   because at end of the day at the Court of

17   Chancery, especially very recently has relied

18   very heavily on discounted cash flow analysis

19   and a key input to that is the projections and

20   your assumptions during the perpetuity period,

21   which we've also raised concerns about from a

22   disclosure standpoint.

23              THE COURT:  In an appraisal action

24   of the kind that defense of cited, are there not

1    mechanisms for those pursuing it to obtain the

2    kind of information that you're suggesting one

3    would need to make an effective case?

4              MR. FARRELL:  You can obtain it

5    once you file, but once you get past the waiting

6    period where you can get the deal price

7    considered back again, you're running the risk

8    of getting below the transaction price and you

9    need to make that cost benefit decision up

10   front.  You know, a fully informed decision of

11   hey, I want to seek appraisal versus you get in.

12   And this happens in these cases all the the time

13   where the company tries to walk away from the

14   projections.  I actually was on the defense side

15   of a case one time where we successfully had

16   some of the projections reduced downward based

17   on a closer look.  So if you're a stockholder

18   trying to determine whether to seek appraisal, I

19   think you need to understand how reliable those

20   projections are so you can decide whether you

21   want to seek appraisal or not or on the back end

22   you're going to end up with a different

23   projection set, because it wasn't reliable

24   because a banker did it or whatever reason.  And

 1      here we need to understand the reliability of

 2      those projections and whether management did

 3      them or someone else.

 4                  THE COURT:  I guess the background

 5      to some these questions about alternative remedy

 6      is, if the test was just, or if if we were

 7      dealing in a world in which it was just what's

 8      the most efficient way for a shareholder like

 9      the Plaintiff to get access to information

10      through this federal case and to try to bring

11      things to a head, that might be one thing.  But

12      I think, you know, underlying some of the

13      decisions is the idea that look, in general.

14      I'm summarizing, but the PSLRA says in essence

15      in the main when these cases are filed, these

16      particular kinds of federal cases are filed,

17      we're not going to permit -- we're a little

18      worried frankly about Plaintiffs filing these

19      cases without already having a sufficient bases

20      to overcome a motion to dismiss.  So in the main

21      we're not going to permit discovery, because we

22      want to make sure that a plaintiff can get over

23      that motion to dismiss hurdle.  On this case,

24      right, if you look at what's happened, you

1    filed, Defendant filed a motion to dismiss.  You

2    didn't answer it.  Now, maybe there was some

3    back and forth between counsel about there being

4    extended briefing period, but we still don't

5    have an answer from you as to that.  But yet

6    what you're doing here is trying to get the

7    discovery that you're not entitled to in the

8    main in this kind of case because the whole

9    structure is meant to say can you get over a

10   motion to dismiss.  But why aren't you trying to

11   do an end run around that, you know, we're going

12   to get that anyway, because we're going to tell

13   them we're going to file a PI motion and then

14   we're going to ask for expedited discovery.  Why

15   isn't what you're doing, if I were to grant your

16   motion, basically permitting an end run around,

17   you know, what Congress was trying to prohibit

18   with the discovery stay provisions of the PSLRA?

19             MR. FARRELL:  I don't think it's

20   really an end run.  If Your Honor's question is

21   about answering a motion to dismiss, we're happy

22   to respond as quickly as Your Honor wants if you

23   believe that needs to be teed up.

24             THE COURT:  Did you all discuss

1  before that your deadline for response to the

2  motion to dismiss is that you would have an

3  extended briefing period or did you all just not

4  file a response as to the date it was --

5  MR. FARRELL:  Unfortunately, I

6  wasn't involved in those discussions, but I

7  believe there was a request for an extension of

8  time and that was granted by Defendants.  But

9  defense counsel, I assume she was involved in

10  those discussions directly, I don't want to

11  speculate.

12  THE COURT:  Okay.  You know what

13  I'm asking.  You know,it could seem like what

14  you're trying to do is let's put off a decision

15  on this motion to dismiss, which again the

16  statutory structure kind of suggests in the main

17  should happen first before discovery occurs.

18  Let me trying to get discovery that I'm not

19  otherwise entitled to in the case by way of this

20  kind of procedural thing that you're attempting

21  here.  Why isn't that kind of end run around, I

22  mean in the way that Dimple talked about, an end

23  run around what the PSLRA is trying to

24  accomplish?

```
1                    MR. FARRELL:  I mean, I think it's

2          kind of a prisoner's dilemma here, in that you

3          could flip it the other way and say well, if

4          that's the law in all of these merger cases

5          where they happen very quickly like, a tender

6          offer, then you could never proceed to

7          preliminary injunction motion simply because

8          there's not enough time to brief the motion to

9          dismiss fully and for Your Honor to write a

10         decision on it.  And so again, this is a narrow

11         situation.  This isn't a broad situation.  We're

12         seeking very narrow discovery that was already

13         produced in another action, so we have other

14         plaintiffs that are on unequal footing.  And

15         then add on top of it, I understand that Your

16         Honor disagrees with the appropriate tasks, but

17         I think it would be appropriate to look into the

18         materiality of these disclosure issues and that

19         would again provide another safeguard to the

20         Court of, you know, is this really a fishing

21         expedition or not.

22                    THE COURT:  And last question here

23         is, and this I think goes to the question of

24         well, you suggested look, there just wouldn't be
```

```
 1        a mechanism otherwise.  We couldn't get this
 2        expedited discovery in this format.  You'd
 3        almost never have a chance to get it.  I think
 4        the other side might say not necessarily.  Look,
 5        there may be cases in which expedited discovery
 6        in these kind of circumstances are granted, but
 7        in those kind of cases the defendants say there
 8        were some different things happening, some
 9        extraordinary things.  I mean cases like in re
10        LeBranch, in re WorldCom.  They pointed to
11        courts that have distinguished those cases,
12        saying they were case where in one of them, for
13        example, where a court had ordered that parties
14        including the parties seeking expedited
15        discovery participated in expedited settlement
16        discussions.  And so almost necessarily in that
17        circumstance, in order to fully participate in
18        these court ordered settlement discussions you
19        had to get the discovery to know what you're
20        talking about.  I think what the Defendants are
21        actually saying is no, no, there are some
22        circumstances, maybe rare, but some in which a
23        Plaintiff like this Plaintiff could get this
24        discovery early and right now it's just this
```

1     case doesn't implicate any of those.  I guess

2     what I'm wondering is it sounds like you

3     disagree that this case doesn't have those kinds

4     of circumstances present.  I'm wondering what

5     you think about the case makes them similar to

6     cases like WorldCom and LeBranch.

7              MR. FARRELL:  I think that what

8     makes them similar is the irreparable harm issue

9     that results from an uninformed vote.  And to

10    Your Honor's point, why didn't we respond to the

11    motion to dismiss and why couldn't we have dealt

12    with this earlier, there's a major procedural

13    problem here that the law imposes.  Defendants

14    point this out in the brief.  Here's the

15    problem.  Under Fara versus Blankenship, which

16    is a Western District of Texas case, the Court

17    held Plaintiffs can't state a 14A claim until

18    the definitive proxy is filed.  And they have

19    argued that as a basis for their motion to

20    dismiss.  So here a preliminary proxy is filed

21    on November 30th.  We come in to Court, try to

22    fight the motion to dismiss, we lose, because

23    there's no definitive proxy under the law.  So

24    we're stuck waiting.  And so we wait until

```
 1      February 4th, very recently, right, that's when

 2      the definitive proxy comes out.  Now we've got a

 3      vote date here that's coming up very soon, March

 4      23rd.  There's simply not enough time between

 5      February 4th and March 23rd to fully brief a

 6      motion to dismiss.  And that's a situation

 7      that's repeatedly is going to come up in these

 8      cases.  And then because the law makes us wait

 9      for a definitive proxy, we have to wait, but

10      then once we wait, they say we're too late.  So

11      which is it.  We lose if we file early, we lose

12      if we file late.  That shouldn't be the law.

13                  THE COURT:  Okay.  Mr. Farrell,

14      you're over 30 minutes.  I'll give you five

15      minutes of rebuttal.

16                  MR. FARRELL:  I'd appreciate that.

17      Thank you.

18                  THE COURT:  Let's hear from Ms.

19      Oswell from the other side.

20                  MS. OSWELL:  Good morning, Your

21      Honor.

22                  THE COURT:  Good morning.

23                  MS. OSWELL:  Your Honor, I think

24      many of the key points were covered in the
```

1    Plaintiff's argument, but just to be clear,

2    there is nothing unusual or extraordinary about

3    this case.  This is one of many cases that

4    Plaintiff's counsel and counsel like them file

5    now every time a merger of any size is

6    announced.  And because of that, if Plaintiffs

7    were to be successful here in overcoming the

8    PSLRA stay, it would essentially change the

9    rules of how the PSLRA applies.

10               And the fact is here Plaintiffs

11   made several litigation decisions that have

12   resulted in the situation they find themselves

13   in now.  First is they chose to file in Federal

14   Court.  They chose to file a federal securities

15   claims.  They know that the PSLRA applies to

16   those claims and would present a challenge to

17   them obtaining discovery.  Then, we filed a

18   motion to dismiss very early as the Court noted.

19   We gave them every opportunity to respond to

20   that motion to dismiss in order to move things

21   along and overcome the limitations under the

22   PSLRA of obtaining discovery.  Counsel

23   referenced the definitive proxy that's now been

24   on file for over three weeks.  Plaintiffs have

```
 1     yet to file an amended complaint.  So it is
 2     their decisions here that are causing the
 3     challenge that counsel identified, not the law
 4     and it's not undue prejudice.  To find so would
 5     essentially be to find that in every case where
 6     a shareholder files what some would qualify as a
 7     strike suit under the federal securities laws
 8     that the PSLRA stay must necessarily be lifted.
 9     And that would be directly contrary to
10     Congress's intent.
11               Now, as we just noted in our
12     brief, this is a mandatory stay under the
13     statute.  And the first question that the Court
14     must answer or must look to is whether the
15     lifting of the stay is consistent with the
16     statutes purpose.  And as we -- as we heard from
17     Plaintiff's counsel, what they are trying to do
18     here is exactly what the statute says the
19     Plaintiffs may not do.  They are looking for
20     information in order to substantiate their
21     claims and as many courts around the country
22     have found, when Plaintiff sues without the
23     requisite information, that is exactly when the
24     PSLRA stay is meant to apply.  Indeed in the
```

1      Central District of California in the American

2      Funds securities litigation case, the Court

3      found that the attempt to use information in

4      discovery to bolster claims is in direct

5      contravention of one of the key purposes of the

6      PSLRA stay.  Moving on to the next question --

7                    THE COURT:  Actually, can we go

8      back?

9                    MS. OSWELL:  Sure.

10                    THE COURT:  To get to some of what

11     Mr. Farrell's concerns were and about timing

12     really of the way these things might go.  You

13     know, it's -- let's assume you have a plaintiff

14     who waits until the definitive proxy is filed

15     which happened when?

16                    MS. OSWELL:  February 4th.

17                    THE COURT:  So February 4th.

18     Relatively recently.  It's going to be a

19     shareholder vote less than two months later.

20     Probably wouldn't be the case -- look, anything

21     is possible, but a motion to dismiss would have

22     to be, you know, severely, you know, truncated

23     in order to have a decision before that vote.

24     And what Mr. Farrell is suggesting, if you

1     didn't allow expedited discovery in at least

2     some cases like this in advance of or consistent

3     with the PI motion, you wouldn't -- you wouldn't

4     be able to effectuate a decision here in this

5     Federal Court case that might have the ability

6     to put off that vote.  What's your response to

7     that?  Is part of the response that well, look,

8     we're not denying that someone could file a

9     preliminary injunction motion in this kind of

10    case and we're not denying even that in some

11    circumstances expedited discovery in advance of

12    that motion could be warranted, we're just not

13    saying this is that case?

14              MS. OSWELL:  Your Honor, that is

15    the answer in this case.  But more than that, I

16    would say that that's exactly what the PSLRA

17    means, that that is exactly what the statute

18    says, that you don't get that discovery.  And

19    what you've heard from Plaintiff is, in fact, he

20    doesn't actually need it.  They've outlined in

21    their brief and extensive footnotes and here

22    today at argument, all the different things that

23    they think are omitted from the proxy.  And

24    whether that is, those things are omitted and

```
 1        they are required to be disclosed as a matter of

 2        law is a completely different questions.  That

 3        argument is made irrespective of whether

 4        Defendants have that information or Plaintiffs

 5        have received that information.  Those are

 6        arguments as a matter of law as to whether the

 7        information that Plaintiffs allege to have been

 8        improperly omitted was, in fact, omitted and was

 9        required to be disclosed.  So it doesn't impact

10        the preliminary injunction motion in the way the

11        Plaintiff has described.  But moreover, in this

12        case we are not even close to there yet, because

13        Plaintiffs have not filed an amended complaint

14        based on the definitive proxy.  In fact I

15        believe the Plaintiff's counsel just admitted

16        that there's no way the complaint that they have

17        on file would withstand a motion to dismiss.  So

18        critically here we're not even at that stage.

19        And it's difficult for Plaintiffs to credibly

20        claim that they would be prejudiced somehow when

21        they are ready to move forward with the

22        preliminary injunction motion and where there

23        are claims pending in another court addressing

24        exactly the same disclosure issues that would --
```

```
 1          that deal with this circumstance on behalf of

 2          the same class of shareholders.

 3                    THE COURT:  And on that front, if

 4          we're talking about the New York State actions,

 5          for example, I mean, I was asking questions

 6          about like, for example, the documents that

 7          Plaintiffs are seeking, how many documents are

 8          we talking about?

 9                    MS. OSWELL:  Your Honor, I don't

10          have the exact number.  I would tell you that

11          Plaintiff's counsel is right.  It's a very small

12          number, somewhere between 15 and 20 documents.

13          It's a narrowly described set of documents.

14                    THE COURT:  And you mentioned in

15          essence the nature of the claims at issue in the

16          state court proceeding, albeit different kinds

17          of claims, you know, will tee up some of these

18          issues and may tee up faster than they occur in

19          this case in some ways.  But wouldn't a part of

20          your brief on the particularization front kind

21          of tell me that these two kinds of claims, the

22          Future View claims in State Court and these

23          PSLRA claims are different and that I couldn't

24          suggest that the kinds of docs that are going to
```

```
1    be sought here really might, in fact, be

2    relevant to the Plaintiff's claims in this case?

3                MS. OSWELL:  That's right, Your

4    Honor.  And let me explain the difference.  So

5    in terms of what is teed up at a preliminary

6    injunction motion, those claims will be

7    essentially the same.  They will be was what was

8    disclosed in the proxy adequate?  Were the

9    things that Plaintiffs alleged to have been

10   omitted from the proxy, were they actually

11   omitted and were they required to be disclosed?

12   As I just mentioned, you don't actually need the

13   documents to make that claim of omission.  When

14   these cases proceed or if they proceed past a

15   preliminary injunction proceeding, the claims

16   become very different.  These are claims under

17   the federal securities laws.  And what -- not to

18   jump ahead of ourselves, but what we've argued

19   in the motion and what numerous courts have held

20   is that these types of claims, these disclosure

21   claims that are based on a merger that really

22   amount to a breach of fiduciary duty don't

23   really fit within the federal securities laws.

24   But their case would be proceeding on the basis
```

1    of Section 14A, which is much different.

2    Whereas, the state court plaintiffs, when they

3    move forward, their cases proceed as a fiduciary

4    duty claim subject to all the Delaware rules as

5    Plaintiff's counsel described.

6              THE COURT:  Would it be fair to

7    say that as they proceed forward, the nature of

8    the legal claims are of course different.

9              MS. OSWELL:  Uh-huh.

10             THE COURT:  The law regarding

11   those claims might present different challenges

12   in the different courts, but at base the

13   question of sufficiency of information that's

14   disclosed to shareholders is going to be an

15   important component of both sets of cases.

16             MS. OSWELL:  Yes.  And especially

17   at the preliminary injunction stage, which is

18   actually a reason not to permit these Plaintiffs

19   discovery, because those issues on behalf of the

20   same class are being litigated actively in the

21   New York State court.  So there is no prejudice

22   to Plaintiffs here.  There may be prejudice to

23   Plaintiff's counsel who have chosen this forum

24   in these types of claims, but there is no

1    prejudice to the shareholder plaintiffs who are

2    a member of the class.

3                 THE COURT:  Just so I understand,

4    why is the nature of the claims going to be

5    particularly similar as it relates to a

6    preliminary injunction motion in this case and

7    not necessarily to the ultimate decisions on the

8    Section 14A claims that are at issue in the

9    case?

10                 MS. OSWELL:  Because at the

11    preliminary injunction stage the question that

12    is being asked is whether the disclosure is

13    adequate and I believe that would be the same,

14    not to, you know, preview Plaintiff's motion,

15    which may cover other things, but I would

16    anticipate it would be the same disclosure issue

17    as is briefed, what we briefed in the state

18    court, because that is the basis on which you

19    may obtain a preliminary injunction.  The

20    damages claims do not give rise to preliminary

21    injunction.

22                 THE COURT:  It really is this

23    irreparable harm issue.  In other words, if we

24    don't allow this disclosure, it could be harmed

```
 1        by this pending vote.

 2                    MS. OSWELL:  Right.

 3                    THE COURT:  Once the vote is out

 4        of the way and this PI motion is out of the way,

 5        one way or the other the underlying legal issues

 6        in the case are going to focus more on

 7        sufficient, you know, for these omissions that

 8        were significant, are they misleading, et

 9        cetera.

10                    MS. OSWELL:  That's exactly right,

11        Your Honor.

12                    THE COURT:  Okay.  And I guess

13        lastly, and I'll let you move on, it almost

14        sounds like what you're saying on the flip side

15        is, I can't think of any case in which a

16        complaint like this is filed.  And I say like

17        this, let's assume we're talking about, take out

18        the preliminary versus definitive proxy issue,

19        and talk about a complaint, similar kinds of

20        claims with regard to a proxy, sounds like

21        you're saying I can't think of almost any case

22        like this where a PI motion would be filed and a

23        plaintiff would actually be entitled to

24        expedited discovery.  Is that what you're
```

1    saying?

2                    MS. OSWELL:  That's exactly right,

3    Your Honor.  We are aware of no case like this,

4    this being a case based on a merger, disclosures

5    made in connection with a merger where the stay

6    has been lifted.

7                    THE COURT:  But we do know that

8    there are some cases in the federal system where

9    a PSLRA complaint is filed and expedited

10   discovery is permitted.  Now, you attempted to

11   distinguish some of those cases.  Do you want to

12   walk through for me why you think the cases that

13   have granted expedited discovery in advance of a

14   decision on a PSLRA complaint are different than

15   what you think the circumstances at issue here

16   are?

17                   MS. OSWELL:  Certainly, Your

18   Honor.  They really fall into three categories.

19   The first is where the Court has identified the

20   prejudice.  And this would include the case of

21   WorldCom, where the Court was dealing with an

22   underlying entity that was in bankruptcy.  And

23   multiple types of cases, so the securities

24   claims, the ARISA claims, other claims were all

1      consolidated into a single action pending before

2      Judge Coate in the Southern District of New

3      York.  And Judge Coate had ordered that all of

4      those parties engage in coordinated settlement

5      discussions.  And again, against an entity with

6      a finite number of resources in bankruptcy.  And

7      in that instance where the shareholder

8      plaintiffs were being essentially ordered to

9      settlement discussions with other plaintiffs who

10     did have access to that discovery, the Court

11     held that that was identified undue prejudice.

12     But we should note that in that opinion Judge

13     Coate said where is here plaintiffs are not in

14     any sense engaged in a fishing expedition or an

15     abusive strike suit and thereby do not act in

16     contravention of the fundamental rationales

17     underlying the PSLRA discovery stay and there is

18     no undue prejudice the stay may be lifted.  So

19     the Court directly contrasted the situation we

20     have here where we essentially have a strike

21     suit to say this case is different, there's

22     something special here and discovery is

23     warranted.

24              Enron is a similar situation

 1      although the opinion is kind of less, provides

 2      less explanation of the basis for lifting the

 3      stay.  Again, a case where the underlying entity

 4      is in bankruptcy and the Court has before it

 5      several cases of different types, all

 6      consolidated, including the ARISA actions, where

 7      a bankruptcy stay has been lifted and the

 8      plaintiffs are entitled, other plaintiffs are

 9      entitled to discovery.  In that case the

10      shareholder plaintiffs are at a disadvantage

11      because they're litigating a consolidated case

12      with plaintiffs raising different claims who do

13      have the discovery and the Court allowed

14      discovery there.

15                THE COURT:  So you'd say if I'm

16      shorthanded in the distinction so far, in

17      WorldCom we've got court-ordered settlement

18      discussions in a consolidated case where not

19      only is the case consolidated, but the party and

20      the plaintiffs use here, is court ordered to

21      participate in the settlement and doesn't have

22      the same kind of documents that the other

23      parties do.  In Enron, sounds like what you're

24      saying is at a minimum a consolidated case --

```
 1              MS. OSWELL:  Uh-huh.

 2              THE COURT:  -- in which the

 3     plaintiffs are at an imbalance as to other

 4     plaintiffs, not necessarily that the additional

 5     aspect of court-ordered settlement involved.

 6              MS. OSWELL:  Exactly right.

 7              THE COURT:  But that's the

 8     distinction.

 9              MS. OSWELL:  And I would note

10     against an entity with the finite resources.  So

11     when you're a plaintiff seeking, raising claims

12     against an entity that's in bankruptcy

13     essentially, your resources are, or the

14     availability of recovery is limited, because

15     part of the estate, your dealing with insurers.

16     It's a much different situation that we have

17     here.  Or you're litigating against a liquid

18     entity who is about to be acquired.

19              THE COURT:  I don't have Enron in

20     front of me, but are you reading in some of

21     those?  I don't think I remember the Court

22     necessarily explicitly distinguishing the

23     decision based on those factors.

24              MS. OSWELL:  Right.  It's the
```

 1    background of Enron.  When you read the full

 2    opinion, I agree with Your Honor, the Court's

 3    discussion of lifting the PSLRA stay is rather

 4    abbreviated at the end of a long opinion about

 5    summary judgement and other issues, but

 6    understanding the background of Enron I think is

 7    critical to understanding why the Court would be

 8    willing to lift the stay there where it might

 9    not be appropriate in other instances.

10              THE COURT:  Now, a case like

11    Kneiting or Kneichting from the Southern

12    District of Ohio, is your argument there

13    basically, we think the case is wrongly decided

14    or that it relied on pre-PSLRA decisions or is

15    there some way you distinguish the result in

16    that case other than it was wrongly decided.

17              MS. OSWELL:  It's wrongly decided,

18    Your Honor.  It relies on a decision that

19    predates the PSLRA stay where the consideration

20    given to the undue prejudice was very minimal

21    because they weren't dealing with the PSLRA

22    stay.  And when you read Kneiting, you see the

23    Court kind of give the same short shrift to the

24    undue prejudice question and to the motivations

```
 1        of the Congress in enacting the PSLRA stay very

 2        much unlike kind of the majority of the

 3        decisions considering the PSLRA stay as such.

 4                    THE COURT:  Also covering the

 5        issue in a case like Lusk, one of the issues,

 6        you know, in terms of determining whether

 7        there's undue prejudice that the Court focuses

 8        on is akin to some of your arguments here about

 9        other remedies that a plaintiff like the

10        Plaintiff here and presumably the plaintiffs at

11        this point who represent might have.  Now, Mr.

12        Farrell has talked about, for example, an

13        appraisal process through Section 262, the

14        ability to participate in state court actions

15        alleging breaches of fiduciary duty, like the

16        ones we've seen here, the ability to seek other

17        kinds of remedies in this very federal case,

18        that even if a preliminary injunction motion is

19        denied, part of the response from Plaintiff's

20        counsel is look, all of those options, sure,

21        they are options, but they've all got lots of

22        downsides to them, so they are not -- sure,

23        there are other options, but they are not really

24        comparable options.  Do you want to talk
```

1    about -- is your response there, I disagree,

2    actually I think they're great options?  Or no,

3    I may acknowledge they may be hurdles, that's

4    not the point.  The point is are there other

5    avenues, and there are?  Which are you arguing?

6              MS. OSWELL:  Maybe a little bit of

7    both.  Those are other avenues.  Those are

8    avenues that are available to these plaintiffs

9    here.  And moreover, Plaintiffs have made the

10   choice to be in federal court where they knew a

11   stay would apply.  If they wanted to litigate a

12   case where they could have access to those

13   documents and could proceed without surviving a

14   motion to dismiss, they should have filed in

15   state court and they should not have filed

16   federal securities claims.  The fact is to the

17   extent there is a challenge here, it's because

18   of the way Plaintiffs chose to proceed.  That

19   choice does not somehow create undue prejudice.

20   Essentially what Plaintiffs are saying here is

21   that they should be allowed to overcome the

22   PSLRA stay simply by virtue of bringing these

23   claims here, which is exactly the opposite of

24   what the statute says.

```
1              THE COURT:  I mean Lusk in
2    particular cited to, so does statute asserted to
3    be somewhat akin to Section 262 and noted that
4    that does provide another remedy for a
5    shareholder alleging that a share price offered
6    in the proposed transaction is unfair.  You
7    particularly said Section 262 is one of these
8    other options.  Can you walk through for me how
9    you would say look, this is the way that process
10   would work and admittedly a different process,
11   one that may have up sides or down sides, but
12   it's an option?  Tell me why you cited that
13   option and tell me why it's something I should
14   consider in the same way that the Lusk court
15   considered that Minnesota statute?
16              MS. OSWELL:  Certainly.  It is the
17   predominant other option that shareholders in
18   Delaware have.  It's disclosed in the proxy.
19   The process is disclosed in the proxy.
20   Shareholders have full rights to proceed under
21   that statute if they think that there is
22   something improper about this case.  And again,
23   that's another alternative in addition to claims
24   that are being litigated on their behalf with
```

```
 1        the benefit of this information in New York.  So
 2        they have multiple options.  And I mean, many
 3        courts in Delaware, you know, permit or the
 4        appraisal statute in Delaware is a standard way
 5        that Plaintiffs presented with a situation that
 6        the Plaintiffs here claim may arise, where they
 7        feel that the merger is unfair, proceed.  It is
 8        the ultimate remedy.  And to kind of go back to
 9        the statute, that's not the standard here.  The
10        undue prejudice question isn't do you have
11        another available remedy.  It's certainly
12        something to consider.  And the fact that there
13        are multiple other avenues here and multiple
14        other ways the Plaintiffs could proceed with
15        these claims, even these Plaintiffs here, had
16        they chosen to litigate this case more actively
17        instead of filing a complaint that they knew was
18        inadequate and doing nothing else other than
19        moving to try to lift the stay without doing the
20        things that are required to essentially warrant
21        lifting the stay, those avenues certainly negate
22        undue prejudice.  But the absence of those
23        avenues is in itself not undue prejudice, it is
24        the circumstance of the PSLRA stay as it was
```

```
 1        intended by Congress.

 2                    THE COURT:  Okay.  I've asked a

 3        lot of questions.  Let me let you -- you have

 4        about five, little more than five minutes left.

 5        Let me let you make some other points that you

 6        want to make.

 7                    MS. OSWELL:  Your Honor, I think

 8        we've probably covered most of them.  The key

 9        points here are we have to go back to the

10        statute.  Plaintiffs have made a number of

11        arguments relating to the claims that they'd

12        like to bring, the arguments that they might

13        bring in a preliminary injunction motion.  They

14        haven't done what the statute requires in order

15        for them to obtain discovery.  It is not

16        consistent with the statute's purpose.

17                    THE COURT:  But you cited that

18        it's language, I think, from Dimple, relying on

19        the prior EPA case suggesting that in both these

20        extraordinary circumstances, that kind of

21        language isn't really found in the statute, may

22        not be applicable here.  Do you have a response?

23                    MS. OSWELL:  It's how the courts

24        have interpreted that language, based, I
```

```
 1      believe, on the kind of different considerations

 2      that are required, including the intent of

 3      Congress and the undue prejudice.  Looking at

 4      those two factors, I think that results in a

 5      situation where it requires something

 6      extraordinary, meaning out of the ordinary.

 7      This case could not be more ordinary.  In fact,

 8      it is one of multiple strike suits that are

 9      filed like this upon the announcement of every

10      merger of any size.  This is perfectly ordinary.

11      So the extraordinary standard, yes, it is what

12      courts have said, it is based on the analysis

13      under the statute.  Perhaps it's a bit of a

14      shorthand, but that's the right way to look at

15      it.  And Plaintiffs are nowhere near that here.

16              And it's the Plaintiff's burden.

17      It's a heavy burden and I think that that is

18      evidence in the extraordinary circumstances

19      standard.  And we've cited in our briefs, there

20      are multiple cases that Your Honor has discussed

21      and some that we've said in our briefs where

22      courts refused to lift the stay even where

23      Plaintiff's are not actively litigating another

24      case in another forum raising similar claims
```

 1    with the documents that Plaintiffs claim they

 2    need here.  So it's even more so in this case

 3    that there is no undue prejudice.  It isn't

 4    extraordinary, because these claims are being

 5    litigated elsewhere.  And I would say that the

 6    stay and the kind of intent behind the stay is

 7    particularly important here where we have a

 8    complaint that Plaintiffs have essentially

 9    admitted will not survive a motion to dismiss

10    and they have not bothered to amend.  Putting

11    aside whether we could get through a motion to

12    dismiss briefing schedule kind of in time and I

13    would say in my experience we could if we needed

14    to, they haven't taken any of the steps that we

15    required to make that argument, to make the

16    argument that well, we can't get through it,

17    because they haven't filed that amended

18    complaint despite having over three weeks with

19    the definitive proxy.

20              There is simply no undue prejudice

21    and I think the key thing here, as many courts

22    have explained, is the fact of being

23    disadvantaged, even disadvantaged with respect

24    to other plaintiffs by virtue of the stay is not

```
 1     undue prejudice.  It is prejudice arising from
 2     the statute exactly as it was designed.  And as
 3     you've said, there are a multitude of other ways
 4     that shareholders may and in fact are pursuing
 5     their rights here to the extent that there is
 6     some issue with the disclosure.
 7               Moving on, the one thing that the
 8     Court asked and I think that the Plaintiffs have
 9     focused on is the notion that well, there aren't
10     that many documents, so what's the big deal
11     here?  And you know, the Court in American Funds
12     recognized that there is prejudice and there
13     would be particularly here given the
14     circumstances of this very ordinary case.  In
15     rejecting essentially the statute's purpose and
16     saying that Plaintiffs get discovery here and
17     going against the statute, there is prejudice to
18     the Defendants.  And the real issue, the real
19     answer is that it's irrelevant, as courts like
20     Sarantagus in the Northern District of Illinois
21     and CrayCos in the Southern District of New York
22     said it doesn't matter whether there's five
23     documents or 5,000 documents, it just doesn't
24     matter because that's the question asked by the
```

1    statute.  The statute doesn't say you can't get

2    a lot of discovery, you can't get millions of

3    pages.  It contains no exception based on

4    burden.

5                As I've said it would be

6    exceptional to lift the PSLRA stay under these

7    circumstances.  The fact that the stay is of

8    difficulty to Plaintiffs is a direct result of

9    Congress's decision to enact the statute and of

10    Plaintiffs litigation choices all along the way

11    from filing the complaint in this venue to not

12    filing an amended complaint upon the filing of a

13    definitive proxy, to choosing to delay their

14    opposition to our motion to dismiss.

15                THE COURT:  Okay.  I guess last

16    question, Ms. Oswell, for you is on the

17    particularization issue.  In your brief you

18    asserted the lack of particularization request.

19    There are some cases that go different ways as

20    to whether a request for all documents produced

21    in the state court litigation is sufficiently

22    particular.  Sometimes it seems like the reason

23    why those cases go one way or the other is not

24    so much whether all documents in the state court

1        litigation is requested but really what's the

2        nature of that production, how big is it, how

3        tailored is the request, et cetera.  We are

4        talking about, sounds like undisputed here, a

5        small number of documents.  Are you still making

6        the case that you think the the request is

7        insufficiently particularized in light of that

8        fact?

9                    MS. OSWELL:  Yes, Your Honor.  And

10       I agree that there are cases that go both ways

11       and this can be looked at in a number of ways.

12       It's not particularized here because until

13       Plaintiff's counsel got up to argue, they hadn't

14       explained any way in which these documents

15       helped them with their preliminary injunction

16       motion.  And as I said, we still dispute whether

17       that's correct, that they need the documents for

18       it.  So it's not particularized in that way.

19       And Plaintiffs haven't met their burden to

20       explain why they need these documents.  So it's

21       not that it's not particularized because we

22       can't identify the set of documents.  I think

23       the cases that come out our way would also agree

24       that they know what the universe of documents

1    are.  It is things that have been produced in
2    other litigations, it's that it's not specific
3    to the claims at issue here.  And until
4    Plaintiff's counsel's argument, we hadn't heard
5    anything on that with any specificity.
6              THE COURT:  Okay.  Thank you.  Let
7    me give Mr. Farrell five minutes for rebuttal.
8              MR. FARRELL:  Yes, Your Honor.
9    Just to make a few brief points.  To the
10   particularized point, I thought it was
11   interesting that we heard no explanation of what
12   potential contents are in these documents that
13   somehow makes them irrelevant to our specific
14   disclosure claims.  And as I've been through, I
15   think they are directly relevant.  I also draw
16   the Court's attention back again to the Kneiting
17   decision, which is very similar to us here,
18   where it is an M&A case, there was the
19   preliminary injunction that was sought.  They
20   argued that the appraisal remedy was adequate.
21   And I can tell you, I've personally seen clients
22   walk away, because they didn't have sufficient
23   information, just like whether to seek
24   appraisals, because there's risk, downside risk

```
 1    in that.  And I hear counsel's point that, you

 2    know, it's wrongly decided in their view because

 3    it relied on a pre PSLRA decision.  But if you

 4    look at the decision, the Court says that this

 5    time constraint, they're referring to the time

 6    constraint of about 30 days for a motion to

 7    dismiss to be decided before the vote, coupled

 8    by a showing of potential irreparable harm,

 9    militates in favor of the order for limited and

10    discrete discovery regarding DLP's financial

11    projections, a disclosure issue that troubles

12    the Court.  And irreparable harm is key here,

13    because the case law teaches that irreparable

14    harm is a higher standard than undue prejudice

15    under the PSLRA, so I think that decision is

16    completely on all fours with our situation here.

17               And finally, I simply ask that the

18    Court, regardless of how Your Honor rules on the

19    motion today, set a day for a preliminary

20    injunction hearing.

21               THE COURT:  Okay.  And let's talk

22    about that issue in just a second.

23               MR. FARRELL:  Sure.

24               THE COURT:  Mr. Farrell.  Thank
```

1      you for your argument and you can be seated and

2      I'll ask some questions about logistics, but I

3      won't require counsel to come forward to the

4      podium here.  If you just stand, that will be

5      sufficient to make sure our court reporter can

6      hear your voice well.

7                  Okay.  We've got a motion to

8      expedite discovery.  I've heard argument.  I'm

9      going to make a decision this week on that and

10     I'll get that to you as quickly as I can.  One

11     way or the other, though, we've got a, as I

12     understand it, shareholder vote set for March

13     23rd and we've got a Plaintiff who has indicated

14     they are going to file a preliminary injunction

15     motion.  And I think first question on the

16     Plaintiff's side and to Mr. Farrell, is

17     regardless of which way the Court goes on this

18     expedited discovery motion, are we to expect a

19     preliminary injunction motion from the

20     Plaintiff?

21                  MR. FARRELL:  Yes, Your Honor.

22                  THE COURT:  Same question is to

23     setting a preliminary injunction hearing in the

24     schedule.  I can't think of the circumstance off

```
 1        the top of my head where a court has actually

 2        set a preliminary injunction hearing as to a

 3        preliminary injunction motion that hasn't been

 4        filed, so I'm not prepared to do that today.

 5        All that said, I don't think there's any other

 6        hurdle here that relates to that issue other

 7        than this motion which I'm going to decide this

 8        week.  So I think what I would suggest to the

 9        parties is that you meet, you discuss, confer

10        and discuss, starting now, what is a schedule

11        going to look like here.  You know, one way or

12        the other, assume the motion is denied on the

13        one hand, when are we going to see a preliminary

14        injunction motion?  What's the briefing schedule

15        going to look like that would tee this up for a

16        hearing and a decision, not only in advance of

17        the March 23rd vote, but also sufficiently in

18        advance, because Judge Stark has indicated to me

19        that he wants me to decide this issue.  There is

20        a right to objection and it might be very

21        truncated, but they will be the prospect if the

22        side that loses to have the ability to object to

23        him.  And that has to be accounted for in this

24        time frame which is about a month.  And so for
```

1    now I guess all I'm saying is counsel are going

2    to have to discuss what's the schedule going to

3    look like, how is it going to be manageable and

4    be prepared to act, you know, on that quickly

5    given the time frames that we're talking about.

6    Does that make sense, Mr. Farrell?

7              MR. FARRELL:  That makes sense.

8    If Your Honor could give us any guidance on how

9    much time you would like for the objection

10   period that would be, I think, helpful for both

11   parties.

12             THE COURT:  It's not going to be

13   able to be anything close to the normal period

14   for objections, which, for example, looks like

15   it's 14 days under the rules, but you get the

16   extra three days.  Our electronic filing rules

17   typically give people an extra three days, so

18   you're talking about 17 days for objection and

19   17 days for a ruling.  Obviously that's never

20   going to happen.  So I mean, look, I'm speaking

21   for the District Court here, but I think if you

22   want to have the ability to make an objection to

23   the decision, you know, you're probably going to

24   need to leave at least, you know, at least five

```
 1    days.  And by five days, I probably mean five
 2    working days for the process of, you know,
 3    well -- for the process of some way for the
 4    parties to articulate their views as to why an
 5    objection is risk well taken and for the
 6    District Court to make a quick decision on that.
 7    I mean, I think the reality is more time would
 8    be better, but the Court would need at least a
 9    week for that process to happen in very short
10    order.  I may end up making -- depending on how
11    truncated the schedule is, I may end up making
12    the decision on the preliminary injunction
13    motion at the end of the hearing itself from the
14    bench, or maybe, you know, extremely quickly
15    thereafter.  So I guess what I'm saying on my
16    part and I'm sure on Chief Judge Stark's part,
17    the Court will act as quickly as it needs to
18    act, but we need to have a schedule that at
19    least allows for this process to play out in an
20    informed way.  So I'm just asking the parties to
21    begin to discuss those issues, because this will
22    all be happening in short order.  Does that make
23    sense?
24                    MR. FARRELL:  Makes perfect sense.
```

1     Thank you.

2                    THE COURT:  Ms. Oswell, does that

3     make sense?

4                    MS. OSWELL:  Yes, Your Honor.

5                    THE COURT:  I guess, Mr. Farrell,

6     the other issue is, I may be off on this, but

7     here's what I take to be the gist of what

8     Defendant is saying, is look, this complaint is

9     based on, in part, of asserted admissions or

10    misleading statements in a preliminary proxy and

11    based on the idea that these shareholders are

12    going to vote, they can't understand what the

13    vote should be able to understand about this,

14    you know, now we've got a definitive proxy

15    filed, but no amended complaint.  And I guess I

16    think part of the Defendant's assertion here is

17    how can we be having a preliminary injunction

18    and a decision as to problems with a preliminary

19    proxy that the shareholder, if it's not the

20    final proxy that the shareholders are actually

21    going to be responding to, wouldn't we have to

22    be talking about what the state of affairs is in

23    the definitive proxy?  If that's so, I think

24    some of your briefing here suggests maybe it is

1          so, how are you going to accomplish teeing those

2          definitive proxy related issues up in the

3          context of this truncated schedule?

4                    MR. FARRELL:  Sure.  If Your Honor

5          would prefer, I'm sure we could probably get an

6          amended complaint as soon as tomorrow.  The

7          definitive proxy narrows some of the issues,

8          because there are additional disclosures, as I

9          believe Defendants point on their briefing.

10         They relate to an advisor and so it's a pretty

11         narrow issue.  It's a lot of disclosure, but

12         it's a narrow issue that's raised in the

13         complaint.  So we could, I think very quickly,

14         turn that around if Your Honor would prefer that

15         approach.

16                   THE COURT:  Yeah, I mean, because

17         I don't know, sounds like maybe you can tell me,

18         if the Plaintiff wasn't talking about the

19         definitive proxy, if we were arguing at this

20         preliminary injunction phase simply about what's

21         in the preliminary proxy, is part of your

22         argument going to be something like these issues

23         are at least in part are moot or something

24         relating to that?

 1          MS. OSWELL:  It would be both,

 2    that they are moot and as a matter of law you

 3    cannot state a claim under Section 14A based on

 4    a preliminary proxy, so there is nothing really

 5    to discuss.

 6          THE COURT:  So if the Plaintiff

 7    wants to try to take those arguments off the

 8    table, it's going to need to be focusing on any

 9    complaint that in turn focuses on a definitive

10    proxy and arguments about why under the

11    securities laws that definitive proxy fails

12    under the PSLRA from your perspective?

13          MS. OSWELL:  Yes, Your Honor.

14          THE COURT:  Sounds like, Mr.

15    Farrell, you're not disagreeing necessarily,

16    that you're saying, yeah, we can get an amended

17    complaint on file very quickly.

18          MR. FARRELL:  That's exactly what

19    I'm saying, Your Honor.

20          THE COURT:  Then I'd suggest you

21    do that.  So that from here on out this schedule

22    that gets drafted relates to what's really at

23    issue.  Okay.  Is there anything further

24    logistically that we need to take up to make

 1    sure that we can move through this process, Mr.

 2    Farrell, from the Plaintiff's perspective?

 3                MR. FARRELL:  Nothing else from my

 4    perspective, Your Honor.

 5                THE COURT:  Mrs. Oswell, from the

 6    Defendant's perspective?

 7                MS. OSWELL:  No, Your Honor.

 8                THE COURT:  Okay.  I appreciate

 9    counsel's arguments today.  For our out of town

10    folks, wish you safe travels.  And as I said,

11    I'll get you a decision shortly and the Court

12    will stand in recess.  Thank you.

13                (End at 10:46 a.m.)

14

15

16

17

18

19

20

21

22

23

24

```
 1    State of Delaware )
                        )
 2    New Castle County )

 3

 4

 5                   CERTIFICATE OF REPORTER

 6

 7         I, Stacy M. Ingram, Certified Court Reporter

 8    and Notary Public, do hereby certify that the

 9    foregoing record, Pages 1 to 72 inclusive, is a true

10    and accurate transcript of my stenographic notes

11    taken on February 24, 2016, in the above-captioned

12    matter.

13

14         IN WITNESS WHEREOF, I have hereunto set my

15    hand and seal this 24th day of February 2016, at

16    Wilmington.

17

18

19                   /s/ Stacy M. Ingram

20                 Stacy M. Ingram, CCR

21

22

23

24
```

**$**

**$10** [2] - 14:7, 14:13
**$11.50** [4] - 14:7, 14:10, 14:13, 14:20

**/**

**/s** [1] - 72:19

**1**

**1** [1] - 72:9
**10** [1] - 14:10
**102(b)(7** [2] - 26:5, 26:8
**10:46** [1] - 71:13
**12** [2] - 19:9, 19:19
**14** [1] - 66:15
**14A** [5] - 16:1, 35:17, 44:1, 45:8, 70:3
**15** [1] - 42:12
**15-01226-LPS-CJB** [1] - 1:4
**15-1226-LPS-CJB** [1] - 3:6
**17** [2] - 66:18, 66:19

**2**

**20** [1] - 42:12
**2010** [2] - 27:6
**2011** [1] - 20:12
**2015** [1] - 13:21
**2016** [3] - 1:10, 72:11, 72:15
**23rd** [4] - 36:4, 36:5, 64:13, 65:17
**24** [2] - 1:10, 72:11
**24th** [1] - 72:15
**26** [14] - 6:21, 7:6, 7:8, 7:14, 17:21, 18:4, 18:9, 18:18, 18:21, 19:2, 19:6, 20:3, 20:8
**262** [5] - 20:17, 25:7, 52:13, 54:3, 54:7
**2A** [1] - 1:11

**3**

**30** [3] - 4:8, 36:14, 63:6
**30th** [1] - 35:21

**4**

**4th** [4] - 36:1, 36:5, 39:16, 39:17

**5**

**5,000** [1] - 59:23

**6**

**60863** [1] - 27:6

**7**

**72** [1] - 72:9

**8**

**844** [1] - 1:13

**9**

**9:30** [1] - 1:11

**A**

**a.m** [2] - 1:11, 71:13
**abbreviated** [1] - 51:4
**ability** [8] - 7:3, 21:22, 24:12, 40:5, 52:14, 52:16, 65:22, 66:22
**able** [6] - 13:6, 18:7, 25:6, 40:4, 66:13, 68:13
**above-captioned** [1] - 72:11
**absence** [1] - 55:22
**abuse** [1] - 9:21
**abusive** [1] - 48:15
**access** [3] - 30:9, 48:10, 53:12
**accomplish** [2] - 32:24, 69:1
**accounted** [1] - 65:23
**accurate** [1] - 72:10
**acknowledge** [1] - 53:3
**acquired** [1] - 50:18
**act** [4] - 48:15, 66:4, 67:17, 67:18
**action** [18] - 3:6, 5:1, 5:3, 5:8, 5:11, 5:17, 5:19, 7:21, 8:8, 9:4,

9:6, 10:16, 13:13, 26:9, 26:10, 28:23, 33:13, 48:1
**actions** [8] - 5:9, 6:1, 15:8, 21:22, 24:20, 42:4, 49:6, 52:14
**actively** [3] - 44:20, 55:16, 57:23
**add** [1] - 33:15
**addition** [1] - 54:23
**additional** [2] - 50:4, 69:8
**address** [1] - 7:23
**addressed** [2] - 16:13, 26:14
**addressing** [1] - 41:23
**adequate** [3] - 43:8, 45:13, 62:20
**adhere** [1] - 9:14
**admissions** [1] - 68:9
**admitted** [2] - 41:15, 58:9
**admittedly** [1] - 54:10
**advance** [5] - 40:2, 40:11, 47:13, 65:16, 65:18
**advisor** [2] - 24:1, 69:10
**affairs** [1] - 68:22
**agency** [1] - 10:23
**aggrieved** [3] - 24:7, 25:1, 25:14
**agree** [3] - 51:2, 61:10, 61:23
**ahead** [3] - 13:18, 13:20, 43:18
**akin** [2] - 52:8, 54:3
**al** [1] - 3:5
**albeit** [1] - 42:16
**allegations** [1] - 18:23
**allege** [1] - 41:7
**alleged** [2] - 8:22, 43:9
**alleging** [3] - 15:12, 52:15, 54:5
**allocated** [1] - 4:8
**allow** [2] - 40:1, 45:24
**allowed** [2] - 49:13, 53:21
**allows** [1] - 67:19
**almost** [5] - 11:20, 34:3, 34:16, 46:13, 46:21
**alternative** [2] - 30:5, 54:23
**amend** [1] - 58:10
**amended** [7] - 38:1,

41:13, 58:17, 60:12, 68:15, 69:6, 70:16
**American** [2] - 10:18, 39:1, 59:11
**amount** [1] - 43:22
**analysis** [8] - 21:10, 22:18, 22:21, 23:2, 23:11, 23:13, 28:18, 57:12
**Ancestry** [1] - 21:6
**ANNE** [1] - 2:3
**announced** [1] - 37:6
**announcement** [1] - 57:9
**answer** [6] - 22:6, 31:2, 31:5, 38:14, 40:15, 59:19
**answering** [1] - 31:21
**anticipate** [1] - 45:16
**anyway** [1] - 31:12
**appealed** [1] - 27:10
**APPEARANCES** [2] - 1:19, 2:1
**appellate** [1] - 27:11
**applicable** [1] - 56:22
**applies** [2] - 37:9, 37:15
**apply** [3] - 23:5, 38:24, 53:11
**appraisal** [19] - 16:8, 20:17, 20:22, 21:5, 21:14, 21:24, 22:9, 22:10, 22:15, 26:10, 27:21, 28:14, 28:23, 29:11, 29:18, 29:21, 52:13, 55:4, 62:20
**appraisals** [1] - 62:24
**appreciate** [2] - 36:16, 71:8
**approach** [2] - 16:7, 69:15
**appropriate** [8] - 6:20, 18:1, 18:9, 19:12, 20:7, 33:16, 33:17, 51:9
**appropriately** [1] - 26:15
**appropriateness** [1] - 27:19
**argue** [2] - 6:20, 61:13
**argued** [2] - 35:19, 43:18, 62:20
**arguing** [2] - 53:5, 69:19
**argument** [14] - 3:7, 4:4, 4:9, 7:24, 37:1, 40:22, 41:3, 51:12, 58:15, 58:16, 62:4,

64:1, 64:8, 69:22
**arguments** [8] - 26:7, 41:6, 52:8, 56:11, 56:12, 70:7, 70:10, 71:9
**ARISA** [2] - 47:24, 49:6
**arise** [1] - 55:6
**arising** [2] - 8:8, 59:1
**articulate** [1] - 67:4
**aside** [1] - 58:11
**aspect** [1] - 50:5
**asserted** [3] - 54:2, 60:18, 68:9
**assertion** [1] - 68:16
**asserts** [1] - 5:2
**associated** [1] - 16:11
**assume** [4] - 32:9, 39:13, 46:17, 65:12
**assumes** [1] - 20:24
**assumptions** [1] - 28:20
**attempt** [1] - 39:3
**attempted** [1] - 47:10
**attempting** [1] - 32:20
**attention** [1] - 62:16
**automatically** [1] - 12:4
**availability** [1] - 50:14
**available** [3] - 9:10, 53:8, 55:11
**avenue** [1] - 25:24
**avenues** [7] - 25:19, 53:5, 53:7, 53:8, 55:13, 55:21, 55:23
**aware** [2] - 26:9, 47:3

**B**

**background** [3] - 30:4, 51:1, 51:6
**bad** [1] - 26:5
**banker** [5] - 5:21, 10:3, 15:4, 21:10, 28:11, 29:24
**banker's** [1] - 22:18
**bankers** [3] - 23:9, 23:17, 27:24
**Banko** [1] - 3:17
**BANKO** [2] - 1:22, 3:19
**bankruptcy** [5] - 47:22, 48:6, 49:4, 49:7, 50:12
**base** [1] - 44:12
**based** [14] - 5:13, 22:24, 25:17, 29:16, 41:14, 43:21, 47:4,

50:23, 56:24, 57:12, 60:3, 68:9, 68:11, 70:3
**bases** [2] - 24:6, 30:19
**basis** [7] - 17:3, 17:12, 17:16, 35:19, 43:24, 45:18, 49:2
**become** [2] - 9:10, 43:16
**BEFORE** [1] - 1:16
**begin** [2] - 16:12, 67:21
**beginning** [1] - 3:12
**behalf** [4] - 24:20, 42:1, 44:19, 54:24
**behind** [1] - 58:6
**below** [3] - 22:12, 26:12, 29:8
**bench** [1] - 67:14
**benefit** [2] - 29:9, 55:1
**best** [1] - 26:13
**better** [1] - 67:8
**between** [4] - 6:10, 31:3, 36:4, 42:12
**big** [2] - 59:10, 61:2
**bit** [2] - 53:6, 57:13
**Blankenship** [1] - 35:15
**blanks** [1] - 15:17
**board** [3] - 5:20, 10:4, 15:2
**bolster** [1] - 39:4
**books** [3] - 5:21, 10:4, 15:4
**bothered** [1] - 58:10
**breach** [2] - 5:3, 43:22
**breaches** [1] - 52:15
**breadth** [1] - 19:16
**Brewer** [1] - 27:5
**brief** [13] - 8:5, 19:3, 19:9, 19:20, 20:3, 33:8, 35:14, 36:5, 38:12, 40:21, 42:20, 60:17, 62:9
**briefed** [2] - 45:17
**briefing** [6] - 31:4, 32:3, 58:12, 65:14, 68:24, 69:9
**briefs** [2] - 57:19, 57:21
**bring** [3] - 30:10, 56:12, 56:13
**bringing** [1] - 53:22
**broad** [1] - 33:11
**Brown** [1] - 27:5
**burden** [7] - 6:18, 12:1, 16:16, 57:16,

57:17, 60:4, 61:19
**BURKE** [1] - 1:16
**buyer** [2] - 23:21, 23:23
**buyer's** [1] - 24:1
**buyers** [1] - 23:24
**BY** [4] - 1:22, 1:23, 2:3, 2:5

## C

**C.A** [1] - 1:4
**California** [4] - 10:19, 27:5, 27:11, 39:1
**cannot** [1] - 70:3
**captioned** [1] - 72:11
**case** [85] - 4:12, 8:15, 9:11, 9:16, 9:24, 10:5, 11:4, 11:12, 11:18, 11:20, 12:1, 12:14, 12:21, 12:23, 13:1, 13:16, 13:22, 14:14, 16:18, 17:16, 17:19, 18:15, 20:11, 21:16, 21:19, 25:9, 25:22, 25:24, 27:2, 27:5, 27:16, 29:3, 29:15, 30:10, 30:23, 31:8, 32:19, 34:12, 35:1, 35:3, 35:5, 35:16, 37:3, 38:5, 39:2, 39:20, 40:5, 40:10, 40:13, 40:15, 41:12, 42:19, 43:2, 43:24, 45:6, 45:9, 46:6, 46:15, 46:21, 47:3, 47:4, 47:20, 48:21, 49:3, 49:9, 49:11, 49:18, 49:19, 49:24, 51:10, 51:13, 51:16, 52:5, 52:17, 53:12, 54:22, 55:16, 56:19, 57:7, 57:24, 58:2, 59:14, 61:6, 62:18, 63:13
**cases** [35] - 6:13, 9:1, 9:9, 10:15, 12:12, 12:15, 12:17, 16:19, 27:24, 29:12, 30:15, 30:16, 30:19, 33:4, 34:5, 34:7, 34:9, 34:11, 35:6, 36:8, 37:3, 40:2, 43:14, 44:3, 44:15, 47:8, 47:11, 47:12, 47:23, 49:5, 57:20, 60:19, 60:23, 61:10, 61:23
**cash** [4] - 14:9, 23:1,

23:22, 28:18
**Castle** [1] - 72:2
**categories** [1] - 47:18
**causing** [1] - 38:2
**CCR** [1] - 72:20
**CD** [1] - 10:8
**Central** [3] - 10:19, 27:4, 39:1
**cents** [1] - 14:10
**certain** [1] - 15:12
**certainly** [7] - 20:22, 26:18, 27:12, 47:17, 54:16, 55:11, 55:21
**CERTIFICATE** [1] - 72:5
**Certified** [1] - 72:7
**certify** [1] - 72:8
**cetera** [2] - 46:9, 61:3
**challenge** [3] - 37:16, 38:3, 53:17
**challenges** [1] - 44:11
**chance** [1] - 34:3
**Chancery** [4] - 16:7, 21:5, 26:18, 28:17
**chancery** [1] - 14:15
**Chandler** [1] - 21:7
**change** [1] - 37:8
**chapter** [1] - 8:9
**Chief** [1] - 67:16
**choice** [3] - 24:13, 53:10, 53:19
**choices** [1] - 60:10
**choosing** [1] - 60:13
**chose** [5] - 13:14, 14:20, 37:13, 37:14, 53:18
**chosen** [2] - 44:23, 55:16
**CHRISTOPHER** [1] - 1:16
**circumstance** [4] - 34:17, 42:1, 55:24, 64:24
**circumstances** [13] - 8:4, 11:21, 19:12, 20:8, 34:6, 34:22, 35:4, 40:11, 47:15, 56:20, 57:18, 59:14, 60:7
**cited** [6] - 12:15, 28:24, 54:2, 54:12, 56:17, 57:19
**civil** [1] - 3:6
**claim** [14] - 9:12, 11:15, 12:2, 12:3, 12:9, 16:2, 17:24, 35:17, 41:20, 43:13, 44:4, 55:6, 58:1,

70:3
**claims** [52] - 5:4, 5:22, 8:22, 15:10, 16:23, 17:3, 17:12, 17:16, 25:21, 26:20, 27:7, 27:9, 27:13, 27:14, 37:15, 37:16, 38:21, 39:4, 41:23, 42:15, 42:17, 42:21, 42:22, 42:23, 43:2, 43:6, 43:15, 43:16, 43:20, 43:21, 44:8, 44:11, 44:24, 45:4, 45:8, 45:20, 46:20, 47:24, 49:12, 50:11, 53:16, 53:23, 54:23, 55:15, 56:11, 57:24, 58:4, 62:3, 62:14
**CLARK** [2] - 2:3, 3:22
**Clark** [1] - 3:23
**class** [3] - 42:2, 44:20, 45:2
**clear** [3] - 5:6, 14:14, 37:1
**clients** [1] - 62:21
**close** [2] - 41:12, 66:13
**closer** [1] - 29:17
**Coate** [3] - 48:2, 48:3, 48:13
**colleague** [1] - 3:16
**collecting** [1] - 10:9
**coming** [1] - 36:3
**companies** [2] - 22:21, 23:16
**company** [2] - 23:7, 29:13
**company's** [3] - 22:17, 22:20, 23:11
**comparable** [4] - 22:20, 23:11, 23:16, 52:24
**compare** [1] - 22:23
**complaint** [20] - 15:11, 18:23, 38:1, 41:13, 41:16, 46:16, 46:19, 47:9, 47:14, 55:17, 58:8, 58:18, 60:11, 60:12, 68:8, 68:15, 69:6, 69:13, 70:9, 70:17
**complaints** [1] - 25:21
**completely** [2] - 41:2, 63:16
**component** [1] - 44:15
**concern** [1] - 18:10
**concerns** [3] - 18:7, 28:21, 39:11

**confer** [2] - 6:4, 65:9
**Congress** [4] - 31:17, 52:1, 56:1, 57:3
**Congress's** [2] - 38:10, 60:9
**connection** [1] - 47:5
**consider** [6] - 18:2, 18:12, 19:13, 24:12, 54:14, 55:12
**consideration** [1] - 51:19
**considerations** [1] - 57:1
**considered** [4] - 19:1, 21:7, 29:7, 54:15
**considering** [2] - 17:10, 52:3
**consistent** [3] - 38:15, 40:2, 56:16
**consolidated** [6] - 48:1, 49:6, 49:11, 49:18, 49:19, 49:24
**constraint** [2] - 63:5, 63:6
**contains** [1] - 60:3
**contemplates** [1] - 17:18
**contents** [1] - 62:12
**context** [2] - 20:3, 69:3
**continue** [1] - 6:15
**CONTINUED** [1] - 2:1
**contrary** [1] - 38:9
**contrasted** [1] - 48:19
**contravention** [2] - 39:5, 48:16
**coordinated** [1] - 48:4
**copy** [1] - 10:8
**core** [2] - 5:20, 10:2
**corporation** [1] - 20:18
**correct** [1] - 61:17
**cost** [1] - 29:9
**counsel** [25] - 3:10, 3:11, 3:13, 3:20, 4:1, 4:8, 4:14, 5:14, 6:4, 9:9, 31:3, 32:9, 37:4, 37:22, 38:3, 38:17, 41:15, 42:11, 44:5, 44:23, 52:20, 61:13, 64:3, 66:1
**Counsel** [2] - 1:24, 2:6
**counsel's** [3] - 62:4, 63:1, 71:9
**country** [1] - 38:21
**County** [1] - 72:2
**couple** [1] - 16:21

**coupled** [1] - 63:7
**course** [1] - 44:8
**COURT** [66] - 1:1, 3:1, 3:18, 3:20, 4:5, 4:16, 5:5, 5:23, 6:5, 6:14, 7:1, 7:15, 11:11, 12:7, 15:6, 16:17, 18:16, 19:4, 19:8, 19:24, 20:5, 21:15, 24:4, 28:23, 30:4, 31:24, 32:12, 33:22, 36:13, 36:18, 36:22, 39:7, 39:10, 39:17, 42:3, 42:14, 44:6, 44:10, 45:3, 45:22, 46:3, 46:12, 47:7, 49:15, 50:2, 50:7, 50:19, 51:10, 52:4, 54:1, 56:2, 56:17, 60:15, 62:6, 63:21, 63:24, 64:22, 66:12, 68:2, 68:5, 69:16, 70:6, 70:14, 70:20, 71:5, 71:8
**court** [27] - 3:7, 11:13, 20:21, 21:21, 26:21, 26:22, 26:24, 27:1, 27:11, 34:13, 34:18, 41:23, 42:16, 44:2, 44:21, 45:18, 49:17, 49:20, 50:5, 52:14, 53:10, 53:15, 54:14, 60:21, 60:24, 64:5, 65:1
**Court** [53] - 1:17, 4:21, 5:2, 8:11, 8:18, 9:13, 9:16, 10:1, 10:16, 10:20, 11:6, 13:11, 13:13, 13:15, 16:7, 18:1, 18:9, 21:5, 24:19, 25:20, 26:18, 28:16, 33:20, 35:16, 35:21, 37:14, 37:18, 38:13, 39:2, 40:5, 42:22, 47:19, 47:21, 48:10, 48:19, 49:4, 49:13, 50:21, 51:7, 51:23, 52:7, 59:8, 59:11, 63:4, 63:12, 63:18, 64:17, 66:21, 67:6, 67:8, 67:17, 71:11, 72:7
**Court's** [2] - 51:2, 62:16
**court-ordered** [2] - 49:17, 50:5
**Courtroom** [1] - 1:11
**Courts** [1] - 16:9
**courts** [10] - 34:11,

38:21, 43:19, 44:12, 55:3, 56:23, 57:12, 57:22, 58:21, 59:19
**cover** [1] - 45:15
**covered** [2] - 36:24, 56:8
**covering** [1] - 52:4
**CrayCos** [1] - 59:21
**create** [2] - 28:9, 53:19
**creative** [1] - 26:7
**credibly** [1] - 41:19
**critical** [1] - 51:7
**critically** [1] - 41:18
**CROMWELL** [1] - 2:5
**crucial** [1] - 13:8
**customary** [1] - 6:13

# D

**damages** [7] - 16:5, 25:12, 25:21, 25:23, 26:4, 26:17, 45:20
**date** [2] - 32:4, 36:3
**days** [9] - 63:6, 66:15, 66:16, 66:17, 66:18, 66:19, 67:1, 67:2
**DCF** [2] - 23:13, 23:15
**de** [1] - 11:20
**deadline** [1] - 32:1
**deal** [3] - 29:6, 42:1, 59:10
**deal's** [1] - 21:11
**dealing** [4] - 30:7, 47:21, 50:15, 51:21
**dealt** [2] - 26:15, 35:11
**decide** [6] - 17:6, 21:13, 22:8, 29:20, 65:7, 65:19
**decided** [5] - 51:13, 51:16, 51:17, 63:2, 63:7
**deciding** [3] - 17:9, 18:19, 22:15
**decision** [29] - 9:2, 14:16, 20:6, 20:11, 21:6, 24:14, 25:13, 27:7, 29:9, 29:10, 32:14, 33:10, 39:23, 40:4, 47:14, 50:23, 51:18, 60:9, 62:17, 63:3, 63:4, 63:15, 64:9, 65:16, 66:23, 67:6, 67:12, 68:18, 71:11
**decisions** [8] - 21:5, 22:14, 30:13, 37:11,

38:2, 45:7, 51:14, 52:3
**Defendant** [4] - 1:8, 2:6, 31:1, 68:8
**Defendant's** [5] - 19:3, 19:9, 19:19, 68:16, 71:6
**Defendants** [16] - 3:21, 3:24, 6:19, 8:1, 9:12, 9:17, 10:14, 12:15, 16:16, 20:14, 32:8, 34:20, 41:4, 59:18, 69:9
**defendants** [2] - 34:7, 35:13
**defense** [6] - 5:14, 6:4, 25:8, 28:24, 29:14, 32:9
**definitive** [19] - 15:15, 24:10, 35:18, 35:23, 36:2, 36:9, 37:23, 39:14, 41:14, 46:18, 58:19, 60:13, 68:14, 68:23, 69:2, 69:7, 69:19, 70:9, 70:11
**DELAWARE** [1] - 1:1
**Delaware** [11] - 1:14, 3:12, 5:11, 5:17, 20:18, 26:3, 44:4, 54:18, 55:3, 55:4, 72:1
**delay** [1] - 60:13
**demonstrate** [1] - 16:22
**denied** [5] - 13:11, 23:21, 25:10, 52:19, 65:12
**deny** [2] - 26:23, 26:24
**denying** [2] - 40:8, 40:10
**DERRICK** [1] - 1:23
**Derrick** [1] - 3:15
**descents** [1] - 20:20
**described** [4] - 25:8, 41:11, 42:13, 44:5
**designed** [3] - 9:8, 9:21, 59:2
**Desmarais** [1] - 3:4
**DESMARAIS** [1] - 1:3
**despite** [1] - 58:18
**destroyed** [1] - 11:9
**determine** [3] - 21:1, 24:6, 29:18
**determined** [1] - 20:6
**determining** [6] - 17:6, 18:22, 21:3, 23:9, 27:21, 52:6
**difference** [1] - 43:4

**different** [25] - 12:21, 13:16, 16:19, 23:3, 25:19, 26:3, 29:22, 34:8, 40:22, 41:2, 42:16, 42:23, 43:16, 44:1, 44:8, 44:11, 44:12, 47:14, 48:21, 49:5, 49:12, 50:16, 54:10, 57:1, 60:19
**difficult** [4] - 16:5, 16:10, 25:24, 41:19
**difficulty** [1] - 60:8
**dilemma** [1] - 33:2
**Dimple** [4] - 12:17, 13:10, 32:22, 56:18
**direct** [2] - 39:4, 60:8
**direction** [2] - 28:5, 28:10
**directly** [2] - 32:10, 38:9, 48:19, 62:15
**disadvantage** [1] - 49:10
**disadvantaged** [2] - 58:23
**disagree** [2] - 35:3, 53:1
**disagreed** [1] - 9:17
**disagreeing** [1] - 70:15
**disagrees** [1] - 33:16
**disclose** [2] - 14:4, 23:17
**disclosed** [7] - 41:1, 41:9, 43:8, 43:11, 44:14, 54:18, 54:19
**disclosure** [27] - 5:22, 7:19, 7:21, 8:22, 11:1, 11:7, 12:5, 13:7, 13:9, 14:1, 14:16, 16:6, 18:15, 25:24, 27:14, 27:18, 28:22, 33:18, 41:24, 43:20, 45:12, 45:16, 45:24, 59:6, 62:14, 63:11, 69:11
**disclosures** [5] - 16:24, 26:16, 47:4, 69:8
**discounted** [2] - 23:1, 28:18
**discovery** [62] - 3:8, 4:22, 6:20, 6:22, 7:2, 7:6, 8:2, 8:9, 8:13, 9:7, 9:14, 9:18, 9:21, 10:17, 12:4, 17:7, 17:11, 17:23, 18:3, 18:5, 18:19, 19:15, 21:19, 22:3, 24:16, 24:18,

25:15, 25:17, 30:21, 31:7, 31:14, 31:18, 32:17, 32:18, 33:12, 34:2, 34:5, 34:15, 34:19, 34:24, 37:17, 37:22, 39:4, 40:1, 40:11, 40:18, 44:19, 46:24, 47:10, 47:13, 48:10, 48:17, 48:22, 49:9, 49:13, 49:14, 56:15, 59:16, 60:2, 63:10, 64:8, 64:18
**discrete** [1] - 63:10
**discuss** [6] - 31:24, 65:9, 65:10, 66:2, 67:21, 70:5
**discussed** [1] - 57:20
**discussion** [1] - 51:3
**discussions** [7] - 32:6, 32:10, 34:16, 34:18, 48:5, 48:9, 49:18
**dismiss** [27] - 8:11, 9:13, 12:10, 17:13, 17:18, 21:18, 30:20, 30:23, 31:1, 31:10, 31:21, 32:2, 32:15, 33:9, 35:11, 35:20, 35:22, 36:6, 37:18, 37:20, 39:21, 41:17, 53:14, 58:9, 58:12, 60:14, 63:7
**dispute** [2] - 7:1, 61:16
**distinction** [2] - 49:16, 50:8
**distinguish** [2] - 47:11, 51:15
**distinguished** [1] - 34:11
**distinguishing** [1] - 50:22
**DISTRICT** [2] - 1:1, 1:1
**District** [14] - 1:17, 9:3, 10:19, 13:21, 27:4, 27:6, 35:16, 39:1, 48:2, 51:12, 59:20, 59:21, 66:21, 67:6
**DLP's** [1] - 63:10
**docs** [3] - 11:22, 13:3, 42:24
**documents** [46] - 4:23, 5:6, 5:7, 5:10, 5:19, 5:20, 5:23, 6:8, 7:20, 9:3, 9:10, 9:15, 9:22, 10:3, 10:7, 10:10, 10:15,

10:22, 11:5, 11:8, 15:4, 15:7, 15:9, 16:15, 25:5, 25:7, 42:6, 42:7, 42:12, 42:13, 43:13, 49:22, 53:13, 58:1, 59:10, 59:23, 60:20, 60:24, 61:5, 61:14, 61:17, 61:20, 61:22, 61:24, 62:12

**done** [2] - 28:3, 56:14
**down** [2] - 27:12, 54:11
**downside** [1] - 62:24
**downsides** [1] - 52:22
**downward** [1] - 29:16
**drafted** [1] - 70:22
**draw** [1] - 62:15
**during** [3] - 8:10, 23:12, 28:20
**duty** [4] - 5:3, 43:22, 44:4, 52:15

### E

**early** [4] - 7:6, 34:24, 36:11, 37:18
**easy** [1] - 8:21
**effective** [1] - 29:3
**effectuate** [2] - 24:14, 40:4
**efficient** [1] - 30:8
**either** [2] - 11:8, 11:16
**electronic** [1] - 66:16
**elsewhere** [1] - 58:5
**enact** [1] - 60:9
**enacting** [1] - 52:1
**End** [1] - 71:13
**end** [15] - 14:7, 14:24, 26:6, 28:16, 29:21, 29:22, 31:11, 31:16, 31:20, 32:21, 32:22, 51:4, 67:10, 67:11, 67:13
**ended** [1] - 27:10
**engage** [1] - 48:4
**engaged** [1] - 48:14
**Enron** [7] - 9:2, 12:14, 48:24, 49:23, 50:19, 51:1, 51:6
**entered** [1] - 4:1
**entitled** [5] - 31:7, 32:19, 46:23, 49:8, 49:9
**entity** [7] - 11:6, 47:22, 48:5, 49:3, 50:10, 50:12, 50:18
**EPA** [1] - 56:19

**equally** [1] - 7:14
**especially** [3] - 14:14, 28:17, 44:16
**ESQ** [4] - 1:22, 1:23, 2:3, 2:5
**essence** [2] - 30:14, 42:15
**essentially** [11] - 6:17, 37:8, 38:5, 43:7, 48:8, 48:20, 50:13, 53:20, 55:20, 58:8, 59:15
**established** [2] - 8:19, 16:9
**estate** [1] - 50:15
**et** [3] - 3:5, 46:8, 61:3
**evaluated** [1] - 19:1
**evidence** [2] - 8:13, 57:18
**exact** [1] - 42:10
**exactly** [12] - 7:10, 38:18, 38:23, 40:16, 40:17, 41:24, 46:10, 47:2, 50:6, 53:23, 59:2, 70:18
**example** [7] - 7:5, 19:8, 34:13, 42:5, 42:6, 52:12, 66:14
**examples** [1] - 27:12
**exception** [1] - 60:3
**exceptional** [1] - 60:6
**exercise** [1] - 21:14
**existing** [1] - 15:24
**expect** [1] - 64:18
**expedite** [1] - 64:8
**expedited** [9] - 3:8, 17:7, 17:11, 17:23, 18:20, 24:16, 25:15, 31:14, 34:2, 34:5, 34:14, 34:15, 40:1, 40:11, 46:24, 47:9, 47:13, 64:18
**expedition** [2] - 33:21, 48:14
**expeditions** [1] - 9:8
**experience** [1] - 58:13
**explain** [3] - 7:19, 43:4, 61:20
**explained** [2] - 58:22, 61:14
**explanation** [2] - 49:2, 62:11
**explicitly** [1] - 50:22
**extended** [2] - 31:4, 32:3
**extension** [1] - 32:7
**extensive** [1] - 40:21
**extent** [4] - 6:5, 18:6,

53:17, 59:5
**extra** [2] - 66:16, 66:17
**extraordinary** [8] - 8:4, 34:9, 37:2, 56:20, 57:6, 57:11, 57:18, 58:4
**extremely** [1] - 67:14

### F

**fact** [15] - 13:14, 24:1, 24:18, 37:10, 40:19, 41:8, 41:14, 43:1, 53:16, 55:12, 57:7, 58:22, 59:4, 60:7, 61:8
**facto** [1] - 11:20
**factor** [1] - 18:13
**factors** [6] - 17:22, 19:1, 19:13, 19:21, 50:23, 57:4
**factual** [2] - 12:20, 15:17
**factually** [1] - 13:15
**fails** [1] - 70:11
**fair** [1] - 44:6
**faith** [1] - 26:6
**fall** [2] - 16:20, 47:18
**Fannie** [1] - 11:3
**far** [3] - 5:16, 28:1, 49:16
**Fara** [1] - 35:15
**FARRELL** [35] - 1:23, 3:14, 4:15, 4:20, 5:12, 6:2, 6:11, 6:16, 7:10, 7:16, 11:24, 13:5, 15:20, 17:20, 18:24, 19:7, 19:18, 20:1, 20:22, 22:5, 25:18, 29:4, 31:19, 32:5, 33:1, 35:7, 36:16, 62:8, 63:23, 64:21, 66:7, 67:24, 69:4, 70:18, 71:3
**Farrell** [12] - 3:15, 5:5, 36:13, 39:24, 52:12, 62:7, 63:24, 64:16, 66:6, 68:5, 70:15, 71:2
**Farrell's** [1] - 39:11
**Faruqi** [2] - 3:15
**FARUQI** [2] - 1:22
**fashion** [1] - 16:5
**faster** [1] - 42:18
**favor** [1] - 63:9
**February** [7] - 1:10,

36:1, 36:5, 39:16, 39:17, 72:11, 72:15
**Federal** [4] - 13:15, 16:9, 37:13, 40:5
**federal** [15] - 12:6, 26:21, 26:24, 27:7, 27:13, 30:10, 30:16, 37:14, 38:7, 43:17, 43:23, 47:8, 52:17, 53:10, 53:16
**few** [2] - 3:2, 62:9
**fiduciary** [4] - 5:3, 43:22, 44:3, 52:15
**fight** [1] - 35:22
**figure** [2] - 12:11, 12:18
**file** [16] - 12:3, 24:21, 29:5, 31:13, 32:4, 36:11, 36:12, 37:4, 37:13, 37:14, 37:24, 38:1, 40:8, 41:17, 64:14, 70:17
**filed** [22] - 5:18, 9:13, 11:17, 13:13, 30:15, 30:16, 31:1, 35:18, 35:20, 37:17, 39:14, 41:13, 46:16, 46:22, 47:9, 53:14, 53:15, 57:9, 58:17, 65:4, 68:15
**files** [1] - 38:6
**filing** [6] - 30:18, 55:17, 60:11, 60:12, 66:16
**fills** [1] - 15:17
**final** [1] - 68:20
**finally** [2] - 7:23, 63:17
**financial** [2] - 24:1, 63:10
**FINANCIAL** [1] - 1:6
**Financial** [1] - 3:5
**FINGER** [1] - 2:2
**Finger** [1] - 3:24
**finished** [2] - 4:11, 4:13
**finite** [3] - 4:23, 48:6, 50:10
**FIRST** [1] - 1:6
**first** [12] - 3:3, 4:11, 6:17, 6:23, 19:21, 21:12, 22:8, 32:17, 37:13, 38:13, 47:19, 64:15
**First** [1] - 3:4
**fishing** [3] - 9:7, 33:20, 48:14
**fit** [1] - 43:23
**Fitness** [2] - 13:16,

13:21
**fits** [1] - 13:2
**five** [6] - 36:14, 56:4, 59:22, 62:7, 66:24, 67:1
**flip** [2] - 33:3, 46:14
**flow** [2] - 23:1, 28:18
**flush** [1] - 15:10
**focus** [9] - 6:23, 7:7, 7:12, 7:17, 8:6, 13:24, 15:14, 16:2, 46:6
**focused** [2] - 14:2, 59:9
**focuses** [2] - 52:7, 70:9
**focusing** [1] - 70:8
**folks** [1] - 71:10
**follow** [1] - 26:22
**followed** [1] - 11:16
**footing** [1] - 33:14
**footnotes** [1] - 40:21
**FOR** [1] - 1:1
**foregoing** [1] - 72:9
**forget** [1] - 17:1
**form** [1] - 13:12
**format** [1] - 34:2
**forth** [1] - 31:3
**forthcoming** [1] - 15:19
**forum** [2] - 44:23, 57:24
**forward** [9] - 4:17, 8:1, 21:16, 27:8, 27:13, 41:21, 44:3, 44:7, 64:3
**four** [1] - 19:21
**fours** [1] - 63:16
**frame** [1] - 65:24
**frames** [1] - 66:5
**frankly** [1] - 30:18
**front** [5] - 13:23, 29:10, 42:3, 42:20, 50:20
**full** [2] - 51:1, 54:20
**fully** [10] - 17:9, 21:10, 22:6, 22:14, 23:18, 26:11, 29:10, 33:9, 34:17, 36:5
**fundamental** [1] - 48:16
**Funds** [3] - 10:18, 39:2, 59:11
**Future** [2] - 26:1, 42:22

## G

**general** [1] - 30:13
**gist** [2] - 17:2, 68:7
**given** [3] - 51:20, 59:13, 66:5
**Glascock** [1] - 21:7
**Gordon** [1] - 23:4
**government** [2] - 10:23, 11:5
**grand** [1] - 17:23
**grant** [4] - 4:5, 24:16, 27:1, 31:15
**granted** [6] - 4:2, 14:15, 17:14, 32:8, 34:6, 47:13
**great** [1] - 53:2
**GROUP** [1] - 1:7
**group** [2] - 13:17, 13:19
**Group** [1] - 3:5
**growth** [2] - 23:4, 23:5
**guaranteed** [1] - 22:11
**guess** [15] - 12:11, 16:17, 17:4, 17:14, 21:15, 24:4, 25:18, 30:4, 35:1, 46:12, 60:15, 66:1, 67:15, 68:5, 68:15
**guidance** [1] - 66:8

## H

**hac** [1] - 4:2
**hand** [2] - 65:13, 72:15
**hands** [2] - 15:16, 25:5
**happy** [1] - 31:21
**harm** [12] - 8:16, 8:20, 8:24, 10:12, 11:2, 11:9, 16:4, 35:8, 45:23, 63:8, 63:12, 63:14
**harmed** [1] - 45:24
**head** [2] - 30:11, 65:1
**hear** [4] - 28:9, 36:18, 63:1, 64:6
**heard** [5] - 38:16, 40:19, 62:4, 62:11, 64:8
**hearing** [6] - 19:15, 63:20, 64:23, 65:2, 65:16, 67:13
**heavily** [1] - 28:18
**heavy** [1] - 57:17

**held** [4] - 9:17, 35:17, 43:19, 48:11
**help** [2] - 14:1, 15:18
**helped** [1] - 61:15
**helpful** [1] - 66:10
**hereby** [1] - 72:8
**hereunto** [1] - 72:14
**high** [1] - 18:6
**higher** [5] - 7:4, 7:11, 8:16, 8:24, 63:14
**highest** [1] - 14:23
**highly** [1] - 5:21
**Honor** [44] - 3:15, 3:23, 4:15, 6:24, 14:2, 18:7, 27:2, 31:22, 33:9, 33:16, 36:21, 36:23, 40:14, 42:9, 43:4, 46:11, 47:3, 47:18, 51:2, 51:18, 56:7, 57:20, 61:9, 62:8, 63:18, 64:21, 66:8, 68:4, 69:4, 69:14, 70:13, 70:19, 71:4, 71:7
**Honor's** [5] - 18:10, 22:6, 27:19, 31:20, 35:10
**HONORABLE** [1] - 1:16
**hopefully** [1] - 22:6
**hundred** [1] - 6:9
**hurdle** [6] - 7:4, 7:9, 7:11, 21:12, 30:23, 65:6
**hurdles** [1] - 53:3

## I

**idea** [2] - 30:13, 68:11
**identified** [3] - 38:3, 47:19, 48:11
**identify** [1] - 61:22
**Illinois** [1] - 59:20
**imbalance** [1] - 50:3
**impact** [1] - 41:9
**implicate** [1] - 35:1
**implied** [1] - 14:8
**import** [1] - 23:12
**important** [13] - 8:6, 8:18, 10:20, 14:18, 16:1, 16:13, 18:14, 21:9, 24:13, 27:15, 27:22, 44:15, 58:7
**imposes** [1] - 35:13
**improper** [1] - 54:22
**improperly** [1] - 41:8
**IN** [2] - 1:1, 72:14
**inadequate** [1] - 55:18

**INC** [1] - 1:7
**include** [1] - 47:20
**included** [1] - 15:13
**including** [5] - 12:16, 21:6, 34:14, 49:6, 57:2
**inclusive** [1] - 72:9
**inconsistent** [2] - 22:19, 23:19
**Incorporated** [1] - 3:5
**indeed** [1] - 38:24
**independent** [1] - 27:16
**indicated** [2] - 64:13, 65:18
**indication** [1] - 14:4
**indications** [1] - 14:17
**inform** [1] - 5:14
**information** [22] - 15:1, 15:12, 15:16, 15:23, 17:1, 21:1, 21:23, 22:8, 24:3, 24:10, 24:17, 29:2, 30:9, 38:20, 38:23, 39:3, 41:4, 41:5, 41:7, 44:13, 55:1, 62:23
**informed** [8] - 11:10, 21:13, 22:15, 23:18, 24:13, 26:11, 29:10, 67:20
**Ingram** [3] - 72:7, 72:19, 72:20
**injunction** [36] - 10:1, 15:18, 15:21, 16:3, 16:14, 17:8, 19:14, 22:4, 24:22, 25:10, 25:16, 33:7, 40:9, 41:10, 41:22, 43:6, 43:15, 44:17, 45:6, 45:11, 45:19, 45:21, 52:18, 56:13, 61:15, 62:19, 63:20, 64:14, 64:19, 64:23, 65:2, 65:3, 65:14, 67:12, 68:17, 69:20
**injury** [1] - 19:22
**input** [1] - 28:19
**instance** [1] - 48:7
**instances** [2] - 16:6, 51:9
**instead** [1] - 55:17
**insufficiently** [1] - 61:7
**insurers** [1] - 50:15
**intend** [1] - 6:23
**intended** [2] - 9:7, 56:1
**intent** [3] - 38:10,

57:2, 58:6
**interest** [2] - 14:5, 14:17
**interesting** [1] - 62:11
**Intermixed** [1] - 27:3
**interpreted** [1] - 56:24
**introduce** [1] - 3:10
**involved** [3] - 32:6, 32:9, 50:5
**involvement** [1] - 28:12
**irrelevant** [2] - 59:19, 62:13
**irreparable** [13] - 8:16, 8:20, 8:24, 10:12, 11:2, 11:9, 16:4, 19:22, 35:8, 45:23, 63:8, 63:12, 63:13
**irrespective** [1] - 41:3
**issue** [29] - 4:21, 6:22, 7:12, 7:16, 7:18, 10:20, 11:7, 12:5, 13:7, 35:8, 42:15, 45:8, 45:16, 45:23, 46:18, 47:15, 52:5, 59:6, 59:18, 60:17, 62:3, 63:11, 63:22, 65:6, 65:19, 68:6, 69:11, 69:12, 70:23
**issues** [23] - 4:12, 6:17, 7:19, 7:22, 11:1, 13:9, 14:1, 18:2, 18:15, 20:13, 22:16, 27:18, 33:18, 41:24, 42:18, 44:19, 46:5, 51:5, 52:5, 67:21, 69:2, 69:7, 69:22
**itself** [2] - 55:23, 67:13

## J

**JAMES** [1] - 1:22
**James** [1] - 3:17
**JR** [1] - 1:3
**Judge** [6] - 1:17, 48:2, 48:3, 48:12, 65:18, 67:16
**judgement** [1] - 51:5
**judgment** [1] - 27:8
**jump** [1] - 43:18

## K

**KABLER** [1] - 2:5
**keep** [1] - 9:8

**keeping** [1] - 9:19
**key** [10] - 6:17, 6:21, 7:19, 9:1, 28:19, 36:24, 39:5, 56:8, 58:21, 63:12
**KeyCorp** [3] - 14:6, 14:11, 14:23
**kind** [31] - 11:19, 12:24, 13:1, 13:24, 14:21, 16:18, 17:16, 18:2, 20:16, 21:23, 22:3, 28:24, 29:2, 31:8, 32:16, 32:20, 32:21, 33:2, 34:6, 34:7, 40:9, 42:20, 49:1, 49:22, 51:23, 52:2, 55:8, 56:20, 57:1, 58:6, 58:12
**kinds** [8] - 25:5, 30:16, 35:3, 42:16, 42:21, 42:24, 46:19, 52:17
**King** [1] - 1:13
**Kneichting** [1] - 51:11
**Kneiting** [9] - 9:23, 12:14, 51:11, 51:22, 62:16
**know,it** [1] - 32:13
**knowing** [1] - 16:11
**knowledge** [1] - 5:16
**Kone** [1] - 20:11

## L

**laches** [1] - 7:24
**lack** [1] - 60:18
**language** [7] - 8:5, 8:6, 28:4, 28:10, 56:18, 56:21, 56:24
**lase** [1] - 14:14
**last** [2] - 33:22, 60:15
**lastly** [2] - 20:12, 46:13
**late** [2] - 36:10, 36:12
**Laura** [1] - 4:1
**LAURA** [1] - 2:5
**law** [15] - 5:4, 8:15, 20:18, 25:23, 33:4, 35:13, 35:23, 36:8, 36:12, 38:3, 41:2, 41:6, 44:10, 63:13, 70:2
**laws** [5] - 12:6, 38:7, 43:17, 43:23, 70:11
**LAYTON** [1] - 2:2
**Layton** [1] - 3:24
**leads** [1] - 8:20
**least** [6] - 40:1, 66:24,

67:8, 67:19, 69:23
**leave** [1] - 66:24
**LeBranch** [2] - 34:10, 35:6
**left** [1] - 56:4
**legal** [2] - 44:8, 46:5
**less** [5] - 28:1, 28:13, 39:19, 49:1, 49:2
**Lifetime** [2] - 13:16, 13:21
**lift** [6] - 10:17, 11:6, 51:8, 55:19, 57:22, 60:6
**lifted** [9] - 4:22, 6:19, 8:3, 10:16, 18:3, 38:8, 47:6, 48:18, 49:7
**lifting** [4] - 38:15, 49:2, 51:3, 55:21
**light** [1] - 61:7
**likely** [1] - 18:21
**limitations** [1] - 37:21
**limited** [3] - 6:6, 50:14, 63:9
**line** [1] - 24:5
**liquid** [1] - 50:17
**list** [1] - 14:7
**litigate** [2] - 53:11, 55:16
**litigated** [3] - 44:20, 54:24, 58:5
**litigating** [3] - 49:11, 50:17, 57:23
**litigation** [7] - 10:18, 26:1, 37:11, 39:2, 60:10, 60:21, 61:1
**litigations** [1] - 62:2
**LLP** [2] - 1:22, 2:5
**logistical** [1] - 4:12
**logistically** [1] - 70:24
**logistics** [1] - 64:2
**look** [27] - 14:22, 17:22, 18:8, 18:12, 20:14, 21:9, 22:21, 23:10, 29:17, 30:13, 30:24, 33:17, 33:24, 34:4, 38:14, 39:20, 40:7, 52:20, 54:9, 57:14, 63:4, 65:11, 65:15, 66:3, 66:20, 68:8
**looked** [2] - 19:21, 61:11
**looking** [2] - 38:19, 57:3
**looks** [1] - 66:14
**lose** [3] - 35:22, 36:11
**loses** [1] - 65:22

loss [1] - 16:10
**lost** [1] - 10:24
**Lou** [1] - 26:1
**lower** [1] - 23:14
**lowered** [1] - 23:15
**Lusk** [5] - 12:17, 13:22, 52:5, 54:1, 54:14
**Luxus** [1] - 27:6

## M

**M&A** [1] - 62:18
**Mae** [1] - 11:3
**main** [4] - 30:15, 30:20, 31:8, 32:16
**major** [1] - 35:12
**majority** [1] - 52:2
**manageable** [1] - 66:3
**management** [6] - 28:1, 28:3, 28:6, 28:9, 28:10, 30:2
**mandatory** [1] - 38:12
**March** [4] - 36:3, 36:5, 64:12, 65:17
**material** [1] - 8:22
**materiality** [2] - 7:18, 33:18
**matter** [8] - 3:4, 12:23, 41:1, 41:6, 59:22, 59:24, 70:2, 72:12
**mean** [14] - 11:19, 12:8, 19:8, 21:20, 32:22, 33:1, 34:9, 42:5, 54:1, 55:2, 66:20, 67:1, 67:7, 69:16
**meaning** [1] - 57:6
**means** [2] - 9:11, 40:17
**meant** [2] - 31:9, 38:24
**measure** [1] - 26:17
**mechanism** [1] - 34:1
**mechanisms** [1] - 29:1
**Media** [1] - 27:3
**meet** [3] - 8:22, 8:24, 65:9
**member** [1] - 45:2
**memory** [1] - 27:8
**mentioned** [7] - 5:17, 12:16, 13:6, 13:11, 20:13, 42:14, 43:12
**merely** [1] - 9:19
**merger** [12] - 20:20, 24:13, 24:23, 24:24, 25:2, 33:4, 37:5,

43:21, 47:4, 47:5, 55:7, 57:10
**merit** [2] - 18:11, 18:22
**meritorious** [1] - 21:17
**merits** [1] - 19:23
**met** [3] - 6:18, 11:22, 61:19
**might** [13] - 16:20, 17:13, 30:11, 34:4, 39:12, 40:5, 43:1, 44:11, 51:8, 52:11, 56:12, 65:20
**militates** [1] - 63:9
**million** [1] - 6:9
**millions** [1] - 60:2
**minimal** [1] - 51:20
**minimum** [1] - 49:24
**Minnesota** [2] - 13:22, 54:15
**minutes** [8] - 4:9, 5:21, 10:4, 15:3, 36:14, 36:15, 56:4, 62:7
**misleading** [6] - 14:21, 16:1, 16:24, 28:7, 46:8, 68:10
**model** [1] - 23:4
**models** [1] - 23:3
**moment** [1] - 19:3
**money** [1] - 26:4
**month** [1] - 65:24
**months** [1] - 39:19
**moot** [2] - 69:23, 70:2
**moreover** [2] - 41:11, 53:9
**morning** [4] - 3:14, 3:22, 36:20, 36:22
**most** [2] - 30:8, 56:8
**motion** [71] - 3:8, 4:9, 4:10, 6:6, 8:11, 8:12, 9:13, 10:1, 11:16, 11:17, 12:9, 15:18, 15:22, 16:3, 17:8, 17:11, 17:13, 17:17, 21:18, 22:4, 24:22, 25:10, 25:16, 30:20, 30:23, 31:1, 31:10, 31:13, 31:16, 31:21, 32:2, 32:15, 33:7, 33:8, 35:11, 35:19, 35:22, 36:6, 37:18, 37:20, 39:21, 40:3, 40:9, 40:12, 41:10, 41:17, 41:22, 43:6, 43:19, 45:6, 45:14, 46:4, 46:22, 52:18, 53:14, 56:13,

58:9, 58:11, 60:14, 61:16, 63:6, 63:19, 64:7, 64:15, 64:18, 64:19, 65:3, 65:7, 65:12, 65:14, 67:13
**motivations** [1] - 51:24
**move** [6] - 20:12, 37:20, 41:21, 44:3, 46:13, 71:1
**moves** [1] - 21:16
**moving** [3] - 39:6, 55:19, 59:7
**MR** [35] - 3:14, 3:19, 4:15, 4:20, 5:12, 6:2, 6:11, 6:16, 7:10, 7:16, 11:24, 13:5, 15:20, 17:20, 18:24, 19:7, 19:18, 20:1, 20:22, 22:5, 25:18, 29:4, 31:19, 32:5, 33:1, 35:7, 36:16, 62:8, 63:23, 64:21, 66:7, 67:24, 69:4, 70:18, 71:3
**MS** [29] - 3:22, 36:20, 36:23, 39:9, 39:16, 40:14, 42:9, 43:3, 44:9, 44:16, 45:10, 46:2, 46:10, 47:2, 47:17, 50:1, 50:6, 50:9, 50:24, 51:17, 53:6, 54:16, 56:7, 56:23, 61:9, 68:4, 70:1, 70:13, 71:7
**multiple** [6] - 47:23, 55:2, 55:13, 57:8, 57:20
**multiples** [5] - 22:19, 22:22, 23:8, 23:10, 23:12
**multitude** [1] - 59:3
**must** [3] - 38:8, 38:14
**MySpace** [1] - 27:2

## N

**name** [2] - 3:23, 13:23
**narrow** [4] - 4:21, 16:15, 33:10, 33:12, 69:11, 69:12
**narrowly** [1] - 42:13
**narrows** [1] - 69:7
**Natarro** [3] - 19:13, 19:20, 20:7
**nature** [6] - 10:4, 15:10, 42:15, 44:7, 45:4, 61:2

near [1] - 57:15
**necessarily** [10] - 5:10, 12:23, 26:22, 34:4, 34:16, 38:8, 45:7, 50:4, 50:22, 70:15
**necessary** [2] - 8:13, 15:23
**need** [23] - 7:7, 13:6, 19:15, 21:2, 21:12, 22:7, 22:14, 23:17, 28:15, 29:3, 29:9, 29:19, 30:1, 40:20, 43:12, 58:2, 61:17, 61:20, 66:24, 67:8, 67:18, 70:8, 70:24
**needed** [1] - 58:13
**needs** [2] - 31:23, 67:17
**negate** [1] - 55:21
**never** [3] - 33:6, 34:3, 66:19
**New** [16] - 5:2, 5:8, 5:9, 5:19, 6:1, 7:20, 13:19, 15:8, 26:2, 42:4, 44:21, 48:2, 55:1, 59:21, 72:2
**next** [1] - 39:6
**NIAGARA** [1] - 1:6
**Niagara** [1] - 3:4
**normal** [1] - 66:13
**Northern** [1] - 59:20
**Notary** [1] - 72:8
**note** [3] - 8:18, 48:12, 50:9
**noted** [3] - 37:18, 38:11, 54:3
**notes** [1] - 72:10
**nothing** [5] - 5:15, 37:2, 55:18, 70:4, 71:3
**notion** [1] - 59:9
**November** [1] - 35:21
**nowhere** [2] - 27:10, 57:15
**number** [12] - 3:6, 6:3, 6:8, 10:14, 14:23, 23:15, 42:10, 42:12, 48:6, 56:10, 61:5, 61:11
**numerous** [1] - 43:19

## O

**object** [1] - 65:22
**objection** [5] - 65:20, 66:9, 66:18, 66:22, 67:5

**objections** [1] - 66:14
**obtain** [5] - 26:4, 29:1, 29:4, 45:19, 56:15
**obtaining** [2] - 37:17, 37:22
**obviously** [1] - 66:19
**occur** [1] - 42:18
**occurs** [1] - 32:17
**OF** [2] - 1:1, 72:5
**offer** [2] - 16:11, 33:6
**offered** [1] - 54:5
**offering** [1] - 14:20
**often** [2] - 23:8, 27:3
**Ohio** [1] - 51:12
**omission** [1] - 43:13
**omissions** [1] - 46:7
**omit** [1] - 17:1
**omitted** [8] - 15:13, 15:23, 40:23, 40:24, 41:8, 43:10, 43:11
**once** [4] - 29:5, 36:10, 46:3
**one** [43] - 5:18, 7:7, 9:1, 10:17, 10:19, 12:14, 13:10, 13:11, 13:17, 14:3, 14:13, 14:19, 17:21, 18:3, 18:24, 19:3, 20:13, 20:16, 20:23, 21:2, 22:18, 22:19, 23:3, 23:7, 24:14, 25:20, 27:18, 29:2, 29:15, 30:11, 34:12, 37:3, 39:5, 46:5, 52:5, 54:7, 54:11, 57:8, 59:7, 60:23, 64:10, 65:11, 65:13
**ones** [2] - 12:16, 52:16
**open** [1] - 28:6
**opinion** [4] - 48:12, 49:1, 51:2, 51:4
**opportunity** [1] - 37:19
**opposed** [1] - 5:3
**opposite** [1] - 53:23
**opposition** [1] - 60:14
**option** [5] - 22:1, 26:13, 54:12, 54:13, 54:17
**options** [10] - 25:3, 25:13, 52:20, 52:21, 52:23, 52:24, 53:2, 54:8, 55:2
**Orchard** [1] - 14:15
**order** [11] - 15:24, 21:10, 26:4, 34:17, 37:20, 38:20, 39:23,
56:14, 63:9, 67:10, 67:22
**ordered** [7] - 34:13, 34:18, 48:3, 48:8, 49:17, 49:20, 50:5
**ordinary** [4] - 57:6, 57:7, 57:10, 59:14
**OSWELL** [29] - 2:5, 36:20, 36:23, 39:9, 39:16, 40:14, 42:9, 43:3, 44:9, 44:16, 45:10, 46:2, 46:10, 47:2, 47:17, 50:1, 50:6, 50:9, 50:24, 51:17, 53:6, 54:16, 56:7, 56:23, 61:9, 68:4, 70:1, 70:13, 71:7
**Oswell** [6] - 4:1, 4:3, 36:19, 60:16, 68:2, 71:5
**otherwise** [2] - 32:19, 34:1
**ourselves** [1] - 43:18
**outlined** [1] - 40:20
**outset** [1] - 26:14
**overcome** [5] - 7:5, 26:5, 30:20, 37:21, 53:21
**overcoming** [1] - 37:7

**P**

**PA** [1] - 2:2
**Page** [2] - 19:9, 19:19
**Pages** [1] - 72:9
**pages** [2] - 6:9, 60:3
**papers** [1] - 4:2
**part** [10] - 40:7, 42:19, 50:15, 52:19, 67:16, 68:9, 68:16, 69:21, 69:23
**participate** [3] - 34:17, 49:21, 52:14
**participated** [1] - 34:15
**participating** [1] - 21:21
**particular** [5] - 12:19, 15:14, 30:16, 54:2, 60:22
**particularization** [3] - 42:20, 60:17, 60:18
**particularized** [7] - 6:7, 8:12, 61:7, 61:12, 61:18, 61:21, 62:10
**particularly** [5] -
12:17, 45:5, 54:7, 58:7, 59:13
**parties** [8] - 34:13, 34:14, 48:4, 49:23, 65:9, 66:11, 67:4, 67:20
**party** [5] - 8:12, 8:14, 9:20, 28:12, 49:19
**Party** [5] - 14:6, 14:11, 14:12, 14:19
**party's** [1] - 19:16
**past** [6] - 18:4, 21:12, 21:17, 27:8, 29:5, 43:14
**pendancy** [1] - 8:10
**pending** [4] - 5:1, 41:23, 46:1, 48:1
**people** [1] - 66:17
**per** [1] - 4:9
**perfect** [1] - 67:24
**perfectly** [2] - 18:8, 57:10
**perhaps** [3] - 15:15, 17:8, 57:13
**period** [9] - 23:2, 23:6, 23:13, 28:20, 29:6, 31:4, 32:3, 66:10, 66:13
**permission** [2] - 4:3, 4:6
**permit** [4] - 30:17, 30:21, 44:18, 55:3
**permitted** [1] - 47:10
**permitting** [1] - 31:16
**perpetuity** [3] - 23:2, 23:5, 28:20
**personally** [1] - 62:21
**perspective** [4] - 70:12, 71:2, 71:4, 71:6
**phase** [2] - 16:14, 69:20
**PI** [6] - 11:16, 31:13, 40:3, 46:4, 46:22
**place** [1] - 22:9
**Plaintiff** [14] - 1:4, 1:24, 20:16, 30:9, 34:23, 38:22, 40:19, 41:11, 52:10, 64:13, 64:20, 69:18, 70:6
**plaintiff** [8] - 11:14, 13:17, 13:23, 30:22, 39:13, 46:23, 50:11, 52:9
**Plaintiff's** [22] - 3:8, 3:12, 4:10, 4:14, 4:17, 13:13, 37:1, 37:4, 38:17, 41:15, 42:11, 43:2, 44:5,
44:23, 45:14, 52:19, 57:16, 57:23, 61:13, 62:4, 64:16, 71:2
**plaintiff's** [1] - 13:18
**Plaintiffs** [32] - 3:16, 4:24, 9:4, 11:4, 30:18, 35:17, 37:6, 37:10, 38:19, 41:4, 41:7, 41:13, 41:19, 42:7, 43:9, 44:18, 44:22, 53:9, 53:18, 53:20, 55:5, 55:6, 55:14, 55:15, 57:15, 58:1, 58:8, 59:8, 59:16, 60:8, 60:10, 61:19
**plaintiffs** [19] - 13:20, 33:14, 37:24, 44:2, 45:1, 48:8, 48:9, 48:13, 49:8, 49:10, 49:12, 49:20, 50:3, 50:4, 52:10, 53:8, 56:10, 58:24
**play** [2] - 17:21, 67:19
**plenty** [1] - 27:23
**podium** [1] - 64:4
**point** [14] - 6:3, 10:14, 13:10, 22:7, 27:1, 27:19, 35:10, 35:14, 52:11, 53:4, 62:10, 63:1, 69:9
**pointed** [4] - 9:6, 19:2, 19:22, 34:10
**pointing** [1] - 20:10
**points** [4] - 36:24, 56:5, 56:9, 62:9
**portion** [1] - 19:5
**possible** [3] - 25:4, 25:9, 39:21
**potential** [3] - 14:5, 62:12, 63:8
**pre** [2] - 51:14, 63:3
**pre-PSLRA** [1] - 51:14
**predates** [1] - 51:19
**predominant** [1] - 54:17
**prefer** [2] - 69:5, 69:14
**preferred** [1] - 26:19
**prejudice** [32] - 8:14, 8:17, 8:23, 10:11, 10:21, 11:18, 11:22, 12:13, 12:22, 13:3, 38:4, 44:21, 44:22, 45:1, 47:20, 48:11, 48:18, 51:20, 51:24, 52:7, 53:19, 55:10, 55:22, 55:23, 57:3, 58:3, 58:20, 59:1, 59:12, 59:17, 63:14
**prejudiced** [1] - 41:20
**preliminary** [43] - 10:1, 15:18, 15:21, 16:3, 16:14, 17:8, 19:14, 22:4, 24:9, 24:21, 25:10, 25:16, 33:7, 35:20, 40:9, 41:10, 41:22, 43:5, 43:15, 44:17, 45:6, 45:11, 45:19, 45:20, 46:18, 52:18, 56:13, 61:15, 62:19, 63:19, 64:14, 64:19, 64:23, 65:2, 65:3, 65:13, 67:12, 68:10, 68:17, 68:18, 69:20, 69:21, 70:4
**prepare** [1] - 15:21
**prepared** [3] - 28:5, 65:4, 66:4
**prescription** [1] - 7:6
**present** [3] - 35:4, 37:16, 44:11
**presentation** [1] - 4:18
**presented** [1] - 55:5
**preserve** [1] - 8:13
**presumably** [6] - 7:8, 10:23, 15:3, 21:20, 24:16, 52:10
**presume** [2] - 21:16, 21:17
**pretty** [1] - 69:10
**prevent** [3] - 8:14, 9:7, 9:21
**preview** [1] - 45:14
**previous** [1] - 20:6
**price** [6] - 22:11, 22:13, 26:12, 29:6, 29:8, 54:5
**prices** [1] - 16:11
**prisoner's** [1] - 33:2
**private** [1] - 8:8
**pro** [1] - 4:2
**probability** [1] - 19:23
**problem** [2] - 26:10, 35:13, 35:15
**problems** [1] - 68:18
**procedural** [6] - 12:24, 13:2, 16:20, 17:5, 32:20, 35:12
**proceed** [10] - 33:6, 43:14, 44:3, 44:7, 53:13, 53:18, 54:20, 55:7, 55:14
**proceeding** [3] - 42:16, 43:15, 43:24
**proceedings** [1] - 8:9

**process** [16] - 17:18, 18:18, 20:17, 21:4, 21:8, 21:24, 25:8, 52:13, 54:9, 54:10, 54:19, 67:2, 67:3, 67:9, 67:19, 71:1
**produce** [3] - 4:23, 9:15, 16:16
**produced** [25] - 4:24, 5:8, 5:10, 5:16, 5:19, 5:24, 7:20, 9:4, 9:5, 9:16, 9:22, 9:24, 10:3, 10:5, 10:8, 10:16, 10:22, 10:23, 11:5, 11:23, 15:8, 21:19, 33:13, 60:20, 62:1
**producing** [1] - 10:10
**production** [4] - 6:6, 11:4, 11:14, 61:2
**productions** [1] - 6:7
**prohibit** [1] - 31:17
**projection** [2] - 23:6, 29:23
**projections** [15] - 23:21, 23:23, 24:2, 27:20, 27:23, 27:24, 28:3, 28:5, 28:8, 28:19, 29:14, 29:16, 29:20, 30:2, 63:11
**proposed** [1] - 54:6
**prospect** [1] - 65:21
**provide** [2] - 33:19, 54:4
**provided** [1] - 24:19
**provides** [1] - 49:1
**proving** [1] - 25:23
**provisions** [2] - 7:3, 31:18
**proxy** [35] - 14:3, 15:14, 15:15, 24:9, 24:10, 28:2, 35:18, 35:20, 35:23, 36:2, 36:9, 37:23, 39:14, 40:23, 41:14, 43:8, 43:10, 46:18, 46:20, 54:18, 54:19, 58:19, 60:13, 68:10, 68:14, 68:19, 68:20, 68:23, 69:2, 69:7, 69:19, 69:21, 70:4, 70:10, 70:11
**PSLRA** [39] - 4:22, 6:18, 6:22, 7:2, 7:12, 8:3, 8:7, 9:6, 9:14, 11:15, 17:18, 18:6, 30:14, 31:18, 32:23, 37:8, 37:9, 37:15, 37:22, 38:8,

38:24, 39:6, 40:16, 42:23, 47:9, 47:14, 48:17, 51:3, 51:14, 51:19, 51:21, 52:1, 52:3, 53:22, 55:24, 60:6, 63:3, 63:15, 70:12
**Public** [1] - 72:8
**purchasers** [1] - 14:5
**purpose** [3] - 38:16, 56:16, 59:15
**purposes** [2] - 4:6, 39:5
**pursuant** [1] - 18:20
**pursue** [3] - 20:20, 21:1, 21:3
**pursued** [1] - 20:23
**pursuing** [2] - 29:1, 59:4
**put** [3] - 8:1, 32:14, 40:6
**putting** [1] - 58:10

## Q

**qualify** [1] - 38:6
**quasi** [1] - 16:8
**questioning** [1] - 24:5
**questions** [7] - 4:19, 6:24, 30:5, 41:2, 42:5, 56:3, 64:2
**quick** [1] - 67:6
**quickly** [8] - 31:22, 33:5, 64:10, 66:4, 67:14, 67:17, 69:13, 70:17
**quite** [2] - 8:18, 8:21
**quote** [1] - 9:17

## R

**raise** [1] - 20:14
**raised** [2] - 28:21, 69:12
**raising** [4] - 22:16, 49:12, 50:11, 57:24
**range** [4] - 14:4, 14:6, 14:10, 14:21
**rare** [1] - 34:22
**rate** [1] - 23:5
**rather** [3] - 10:9, 26:23, 51:3
**rationales** [1] - 48:16
**re** [2] - 34:9, 34:10
**read** [2] - 51:1, 51:22
**reading** [1] - 50:20
**ready** [1] - 41:21

**real** [4] - 23:24, 27:17, 59:18
**reality** [1] - 67:7
**really** [15] - 7:2, 24:7, 31:20, 33:20, 39:12, 43:1, 43:21, 43:23, 45:22, 47:18, 52:23, 56:21, 61:1, 70:4, 70:22
**reason** [3] - 29:24, 44:18, 60:22
**reasonable** [1] - 7:5
**reasonableness** [2] - 19:10, 20:9
**reasons** [2] - 13:11, 23:14
**rebuttal** [2] - 36:15, 62:7
**receive** [1] - 24:2
**received** [1] - 41:5
**recent** [1] - 22:14
**recently** [4] - 21:6, 28:17, 36:1, 39:18
**recess** [1] - 71:12
**recognized** [1] - 59:12
**record** [3] - 3:3, 3:11, 72:9
**records** [1] - 5:13
**recovery** [1] - 50:14
**redress** [2] - 22:2, 25:4
**reduced** [1] - 29:16
**refer** [2] - 7:24, 8:2
**reference** [1] - 19:10
**referenced** [1] - 37:23
**referred** [3] - 23:8, 27:2, 27:3
**referring** [4] - 19:19, 19:20, 20:2, 63:5
**refused** [3] - 10:16, 11:6, 57:22
**regard** [2] - 12:12, 46:20
**regarding** [2] - 44:10, 63:10
**regardless** [2] - 63:18, 64:17
**rejecting** [1] - 59:15
**relate** [1] - 69:10
**related** [4] - 5:1, 7:9, 9:4, 69:2
**relates** [4] - 6:22, 45:5, 65:6, 70:22
**relating** [2] - 56:11, 69:24
**relatively** [2] - 6:12, 39:18
**relevant** [5] - 5:22,

7:21, 13:9, 43:2, 62:15
**reliability** [1] - 30:1
**reliable** [4] - 27:22, 28:1, 29:19, 29:23
**relied** [3] - 28:17, 51:14, 63:3
**relief** [2] - 24:6, 26:23
**relies** [1] - 51:18
**rely** [1] - 9:1
**relying** [1] - 56:18
**remedies** [6] - 20:15, 25:11, 25:12, 52:9, 52:17
**remedy** [12] - 16:5, 16:8, 20:19, 20:23, 21:2, 21:3, 27:20, 30:5, 54:4, 55:8, 55:11, 62:20
**remember** [2] - 22:9, 50:21
**repeatedly** [2] - 26:19, 36:7
**REPORTER** [1] - 72:5
**reporter** [1] - 64:5
**Reporter** [1] - 72:7
**represent** [1] - 52:11
**representative** [1] - 24:20
**represents** [1] - 20:16
**request** [6] - 19:16, 32:7, 60:18, 60:20, 61:3, 61:6
**requested** [1] - 61:1
**require** [2] - 14:16, 64:3
**required** [8] - 9:22, 10:2, 41:1, 41:9, 43:11, 55:20, 57:2, 58:15
**requires** [2] - 56:14, 57:5
**requisite** [1] - 38:23
**resources** [3] - 48:6, 50:10, 50:13
**respect** [5] - 25:12, 25:13, 58:23
**respond** [3] - 31:22, 35:10, 37:19
**responding** [1] - 68:21
**response** [7] - 32:1, 32:4, 40:6, 40:7, 52:19, 53:1, 56:22
**restrictions** [1] - 18:20
**result** [5] - 10:12, 10:21, 11:10, 51:15,

60:8
**resulted** [1] - 37:12
**results** [2] - 35:9, 57:4
**reviewing** [1] - 5:13
**Richards** [1] - 3:23
**RICHARDS** [1] - 2:2
**rights** [4] - 21:14, 24:15, 54:20, 59:5
**rise** [1] - 45:20
**risk** [7] - 11:8, 22:12, 26:12, 29:7, 62:24, 67:5
**routinely** [2] - 8:2, 10:5
**rule** [1] - 11:20
**Rule** [14] - 6:21, 7:5, 7:8, 7:13, 17:21, 18:4, 18:9, 18:18, 18:20, 19:2, 19:5, 20:3, 20:8
**rules** [5] - 37:9, 44:4, 63:18, 66:15, 66:16
**ruling** [1] - 66:19
**run** [6] - 26:11, 31:11, 31:16, 31:20, 32:21, 32:23
**running** [2] - 22:12, 29:7

## S

**safe** [1] - 71:10
**safeguard** [1] - 33:19
**Sarah** [1] - 3:23
**SARAH** [1] - 2:3
**Sarantagus** [1] - 59:20
**satisfied** [2] - 7:13, 7:14
**scenario** [2] - 12:20, 16:21
**schedule** [9] - 58:12, 64:24, 65:10, 65:14, 66:2, 67:11, 67:18, 69:3, 70:21
**scope** [1] - 7:17
**seal** [1] - 72:15
**seated** [1] - 64:1
**second** [4] - 7:16, 19:11, 19:22, 63:22
**secret** [1] - 9:9
**Section** [10] - 16:1, 20:3, 20:17, 25:7, 44:1, 45:8, 52:13, 54:3, 54:7, 70:3
**securities** [14] - 5:4, 9:5, 9:9, 9:11, 10:18, 12:6, 37:14,

**shrift** [1] - 51:23
**side** [10] - 3:10, 3:12, 4:9, 4:17, 29:14, 34:4, 36:19, 46:14, 64:16, 65:22
**sides** [2] - 54:11
**significant** [1] - 46:8
**similar** [8] - 11:3, 35:5, 35:8, 45:5, 46:19, 48:24, 57:24, 62:17
**similarly** [1] - 9:23
**simplistic** [1] - 26:17
**simply** [8] - 12:3, 26:19, 33:7, 36:4, 53:22, 58:20, 63:17, 69:20
**single** [1] - 48:1
**situation** [15] - 10:7, 11:2, 12:24, 13:2, 13:17, 33:11, 36:6, 37:12, 48:19, 48:24, 50:16, 55:5, 57:5, 63:16
**six** [1] - 5:9
**size** [2] - 37:5, 57:10
**small** [3] - 6:12, 42:11, 61:5
**someone** [3] - 26:7, 30:3, 40:8
**sometimes** [1] - 60:22
**somewhat** [1] - 54:3
**somewhere** [1] - 42:12
**soon** [2] - 36:3, 69:6
**sort** [3] - 11:9, 13:7, 28:11
**sought** [3] - 11:4, 43:1, 62:19
**Sounds** [1] - 70:14
**sounds** [7] - 11:11, 35:2, 46:14, 46:20, 49:23, 61:4, 69:17
**Southern** [4] - 9:2, 48:2, 51:11, 59:21
**speaking** [2] - 4:13, 66:20
**special** [1] - 48:22
**specific** [5] - 6:3, 14:17, 23:5, 62:2, 62:13
**specifically** [3] - 5:15, 20:4, 22:17
**specificity** [1] - 62:5
**speculate** [1] - 32:11
**Stacy** [3] - 72:7, 72:19, 72:20
**stage** [6] - 17:5,

**38:7, 39:2, 43:17, 43:23, 47:23, 53:16, 70:11**
**see** [7] - 12:12, 20:9, 22:5, 24:8, 24:11, 51:22, 65:13
**seek** [10] - 22:2, 22:9, 22:15, 27:21, 28:14, 29:11, 29:18, 29:21, 52:16, 62:23
**seeking** [7] - 16:15, 24:18, 25:11, 33:12, 34:14, 42:7, 50:11
**seem** [1] - 32:13
**sense** [8] - 7:12, 9:18, 48:14, 66:6, 66:7, 67:23, 67:24, 68:3
**set** [9] - 4:23, 16:15, 29:23, 42:13, 61:22, 63:19, 64:12, 65:2, 72:14
**sets** [2] - 28:8, 44:15
**setting** [1] - 64:23
**settled** [1] - 27:9
**settlement** [7] - 34:15, 34:18, 48:4, 48:9, 49:17, 49:21, 50:5
**several** [4] - 21:5, 21:8, 37:11, 49:5
**severely** [1] - 39:22
**shall** [1] - 8:10
**share** [1] - 54:5
**shareholder** [15] - 20:19, 21:16, 24:7, 24:21, 25:1, 25:14, 30:8, 38:6, 39:19, 45:1, 48:7, 49:10, 54:5, 64:12, 68:19
**shareholder's** [1] - 24:15
**shareholders** [10] - 20:15, 21:20, 42:2, 44:14, 54:17, 54:20, 59:4, 68:11, 68:20
**shopping** [1] - 13:12
**short** [3] - 51:23, 67:9, 67:22
**shorthand** [1] - 57:14
**shorthanded** [1] - 49:16
**shortly** [2] - 4:7, 71:11
**shot** [1] - 27:11
**show** [6] - 12:1, 12:5, 13:6, 16:22, 17:2, 26:5
**showing** [1] - 63:8
**shown** [1] - 13:4
**shows** [1] - 12:22

17:10, 21:18, 41:18, 44:17, 45:11
**stand** [2] - 64:4, 71:12
**standard** [13] - 7:4, 8:16, 8:17, 8:23, 8:24, 18:5, 19:10, 26:3, 55:4, 55:9, 57:11, 57:19, 63:14
**standpoint** [1] - 28:22
**Stark** [1] - 65:18
**Stark's** [1] - 67:16
**start** [1] - 3:11
**started** [1] - 3:2
**starting** [1] - 65:10
**state** [17] - 11:13, 20:20, 21:21, 26:21, 26:22, 27:9, 27:14, 35:17, 42:16, 44:2, 45:17, 52:14, 53:15, 60:21, 60:24, 68:22, 70:3
**State** [13] - 5:1, 5:2, 5:8, 5:9, 6:1, 13:13, 15:8, 24:19, 26:2, 42:4, 42:22, 44:21, 72:1
**statement** [4] - 15:14, 15:15, 24:9, 24:10
**statements** [3] - 15:24, 28:7, 68:10
**STATES** [1] - 1:1
**States** [1] - 1:17
**statute** [21] - 8:7, 9:20, 22:10, 38:13, 38:18, 40:17, 53:24, 54:2, 54:15, 54:21, 55:4, 55:9, 56:10, 56:14, 56:21, 57:13, 59:2, 59:17, 60:1, 60:9
**statute's** [2] - 56:16, 59:15
**statutes** [1] - 38:16
**statutory** [1] - 32:16
**stay** [42] - 4:22, 6:19, 6:22, 7:2, 8:3, 9:7, 9:15, 10:6, 10:17, 11:7, 14:15, 18:3, 18:5, 31:18, 37:8, 38:8, 38:12, 38:15, 38:24, 39:6, 47:5, 48:17, 48:18, 49:3, 49:7, 51:3, 51:8, 51:19, 51:22, 52:1, 52:3, 53:11, 53:22, 55:19, 55:21, 55:24, 57:22, 58:6, 58:24, 60:6, 60:7
**stayed** [1] - 8:10

**stenographic** [1] - 72:10
**stent** [1] - 8:2
**steps** [1] - 58:14
**still** [7] - 12:1, 12:4, 16:22, 18:5, 31:4, 61:5, 61:16
**stock** [2] - 14:9, 23:22
**stockholder** [2] - 28:13, 29:17
**stockholders** [4] - 14:18, 20:24, 23:18, 23:20
**stop** [1] - 24:23
**Street** [1] - 1:13
**stricter** [1] - 7:4
**strictly** [1] - 9:14
**strictures** [1] - 9:20
**strike** [4] - 38:7, 48:15, 48:20, 57:8
**structure** [2] - 31:9, 32:16
**stuck** [1] - 35:24
**subject** [1] - 44:4
**substantiate** [1] - 38:20
**success** [1] - 19:23
**successful** [2] - 24:22, 37:7
**successfully** [1] - 29:15
**sues** [1] - 38:22
**sufficiency** [1] - 44:13
**sufficient** [6] - 20:24, 21:4, 30:19, 46:7, 62:22, 64:5
**sufficiently** [3] - 21:13, 60:21, 65:17
**suggest** [2] - 42:24, 65:8, 70:20
**suggested** [1] - 33:24
**suggesting** [6] - 11:12, 12:19, 18:18, 29:2, 39:24, 56:19
**suggests** [3] - 28:11, 32:16, 68:24
**suit** [3] - 38:7, 48:15, 48:21
**suits** [1] - 57:8
**SULLIVAN** [1] - 2:5
**summarizing** [1] - 30:14
**summary** [2] - 27:8, 51:5
**support** [1] - 15:18
**suppose** [1] - 24:15
**supposed** [1] - 17:15
**survive** [1] - 58:9

**surviving** [1] - 53:13
**suspect** [1] - 6:12
**system** [1] - 47:8

**T**

**table** [2] - 4:1, 70:8
**tailored** [1] - 61:3
**talks** [1] - 6:6
**target** [1] - 22:23
**tasks** [1] - 33:16
**teaches** [2] - 8:15, 63:13
**tee** [3] - 42:17, 42:18, 65:15
**teed** [3] - 17:9, 31:23, 43:5
**teeing** [1] - 69:1
**tender** [1] - 33:5
**terminal** [2] - 23:8, 23:13
**terms** [2] - 43:5, 52:6
**test** [10] - 7:5, 19:5, 19:11, 19:12, 19:13, 19:20, 20:7, 20:8, 20:9, 30:6
**Texas** [2] - 9:3, 35:16
**THE** [68] - 1:1, 1:1, 1:16, 3:1, 3:18, 3:20, 4:5, 4:16, 5:5, 5:23, 6:5, 6:14, 7:1, 7:15, 11:11, 12:7, 15:6, 16:17, 18:16, 19:4, 19:8, 19:24, 20:5, 21:15, 24:4, 28:23, 30:4, 31:24, 32:12, 33:22, 36:13, 36:18, 36:22, 39:7, 39:10, 39:17, 42:3, 42:14, 44:6, 44:10, 45:3, 45:22, 46:3, 46:12, 47:7, 49:15, 50:2, 50:7, 50:19, 51:10, 52:4, 54:1, 56:2, 56:17, 60:15, 62:6, 63:21, 63:24, 64:22, 66:12, 68:2, 68:5, 69:16, 70:6, 70:14, 70:20, 71:5, 71:8
**themselves** [2] - 3:10, 37:12
**thereafter** [2] - 9:22, 67:15
**thereby** [1] - 48:15
**they've** [2] - 40:20, 52:21
**third** [1] - 28:12

**three** [7] - 6:17, 25:19, 37:24, 47:18, 58:18, 66:16, 66:17
**throughout** [2] - 8:5, 23:2
**timing** [1] - 39:11
**today** [8] - 3:3, 3:7, 4:14, 4:21, 40:22, 63:19, 65:4, 71:9
**today's** [2] - 4:4, 4:6
**tomorrow** [1] - 69:6
**top** [5] - 14:11, 14:12, 33:15, 65:1
**town** [1] - 71:9
**trading** [1] - 22:22
**transaction** [8] - 14:9, 21:8, 22:11, 22:13, 23:22, 26:12, 29:8, 54:6
**transcript** [1] - 72:10
**travels** [1] - 71:10
**treat** [1] - 27:16
**tries** [1] - 29:13
**troubles** [1] - 63:11
**true** [1] - 72:9
**truncated** [4] - 39:22, 65:21, 67:11, 69:3
**try** [4] - 30:10, 35:21, 55:19, 70:7
**trying** [14] - 12:11, 12:18, 15:20, 24:5, 25:16, 28:14, 29:18, 31:6, 31:10, 31:17, 32:14, 32:18, 32:23, 38:17
**turn** [2] - 69:14, 70:9
**two** [7] - 14:13, 18:2, 23:3, 28:8, 39:19, 42:21, 57:4
**types** [4] - 43:20, 44:24, 47:23, 49:5
**typically** [1] - 66:17

**U**

**ultimate** [2] - 45:7, 55:8
**ultimately** [5] - 17:13, 17:14, 18:22, 24:9, 25:4
**under** [25] - 6:18, 6:21, 8:3, 8:8, 11:21, 12:6, 14:10, 18:9, 19:2, 20:8, 22:10, 35:15, 35:23, 37:21, 38:7, 38:12, 43:16, 54:20, 57:13, 60:6, 63:15, 66:15,

70:3, 70:10, 70:12
**underlying** [7] - 12:5, 17:24, 30:12, 46:5, 47:22, 48:17, 49:3
**undervalued** [1] - 21:11
**undisputed** [1] - 61:4
**undue** [25] - 8:14, 8:17, 8:23, 10:11, 10:21, 11:18, 11:21, 12:12, 12:22, 13:3, 38:4, 48:11, 48:18, 51:20, 51:24, 52:7, 53:19, 55:10, 55:22, 55:23, 57:3, 58:3, 58:20, 59:1, 63:14
**unequal** [1] - 33:14
**unexplained** [1] - 23:14
**unfair** [2] - 54:6, 55:7
**unfortunately** [2] - 6:2, 32:5
**uninformed** [3] - 8:20, 10:13, 35:9
**UNITED** [1] - 1:1
**United** [1] - 1:17
**universe** [1] - 61:24
**unless** [3] - 6:23, 8:11, 26:6
**unlike** [1] - 52:2
**unusual** [1] - 37:2
**up** [19] - 11:16, 17:9, 22:23, 27:10, 29:9, 29:22, 31:23, 36:3, 36:7, 42:17, 42:18, 43:5, 54:11, 61:13, 65:15, 67:10, 67:11, 69:2, 70:24
**US** [1] - 27:6
**usage** [1] - 23:19

**V**

**vacuum** [1] - 24:2
**valid** [1] - 12:10
**value** [5] - 14:8, 22:17, 22:24, 23:15, 23:24
**valuing** [1] - 23:6
**venue** [1] - 60:11
**versus** [5] - 3:4, 27:5, 29:11, 35:15, 46:18
**Vice** [1] - 21:7
**View** [1] - 42:22
**view** [3] - 7:11, 18:14, 63:2
**views** [1] - 67:4
**violation** [1] - 16:6

**virtue** [2] - 53:22, 58:24
**vis** [2] - 22:3
**vis-a-vis** [1] - 22:3
**voice** [1] - 64:6
**vote** [15] - 8:20, 10:13, 11:10, 35:9, 36:3, 39:19, 39:23, 40:6, 46:1, 46:3, 63:7, 64:12, 65:17, 68:12, 68:13

**W**

**wait** [4] - 35:24, 36:8, 36:9, 36:10
**waiting** [2] - 29:5, 35:24
**waits** [1] - 39:14
**walk** [5] - 7:18, 29:13, 47:12, 54:8, 62:22
**WALLACE** [1] - 1:3
**wants** [3] - 31:22, 65:19, 70:7
**warrant** [1] - 55:20
**warranted** [2] - 40:12, 48:23
**ways** [6] - 42:19, 55:14, 59:3, 60:19, 61:10, 61:11
**Wednesday** [1] - 1:10
**week** [3] - 64:9, 65:8, 67:9
**weeks** [2] - 37:24, 58:18
**weight** [2] - 28:13, 28:15
**welcome** [1] - 3:18
**Western** [1] - 35:16
**whereas** [1] - 44:2
**WHEREOF** [1] - 72:14
**whole** [1] - 31:8
**willing** [1] - 51:8
**Wilmington** [2] - 1:14, 72:16
**win** [1] - 25:16
**wish** [1] - 71:10
**withstand** [1] - 41:17
**WITNESS** [1] - 72:14
**wondering** [2] - 35:2, 35:4
**word** [1] - 17:1
**words** [3] - 15:6, 15:12, 45:23
**world** [1] - 30:7
**WorldCom** [4] - 34:10, 35:6, 47:21, 49:17

**worried** [1] - 30:18
**write** [1] - 33:9
**wrongly** [4] - 51:13, 51:16, 51:17, 63:2

**Y**

**York** [15] - 5:2, 5:8, 5:9, 5:19, 6:1, 7:21, 13:20, 15:8, 26:2, 42:4, 44:21, 48:3, 55:1, 59:21